Jerry KENDALL, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 108, 1997.

Supreme Court of Delaware.

Submitted: Jan. 4, 1999.
Decided: April 5, 1999.

Bernard J. O'Donnell, Assistant Public Defender, Wilmington, Delaware, for appellant.

Charles F. Walker, and Thomas A. Stevens, Deputy Attorneys General, Department of Justice, for appellee.

Before VEASEY, Chief Justice, WALSH and HARTNETT, Justices.

VEASEY, Chief Justice:

In affirming the judgment entered upon a conviction in a criminal case, we clarify the admissibility under D.R.E. 404(b) of evidence of a defendant's prior misconduct as direct proof of certain crimes, as well as evidence of a defendant's knowledge, intent, and plan. That issue arises out of the defendant's direct appeal from a conviction of Theft by False Pretense and Racketeering, among other charges. We hold: (a) that where a defendant intentionally created a false impression as to his past conduct in order to affect adversely his victims' judgment of their dealings with him, it was not an abuse of discretion for the trial court to admit evidence of the prior misconduct as direct proof of Theft by False Pretense and of a pattern of Racketeering; and (b) that evidence of prior misconduct evincing the defendant's intent to steal, his knowledge of how to carry out the misconduct, and his common scheme or plan may be admitted in evidence.

### Facts

A Superior Court jury convicted defendant-appellant Jerry Kendall of Racketeering, Perjury First Degree, 20 counts of Felony Theft, and 12 counts of Improper Retention of Contractor's Funds. The Superior Court sentenced him to eight years incarceration at Level V followed by a period of probation. Kendall now appeals to this Court. Kendall's convictions arose out of the following circumstances.

The evidence proved that Kendall misrepresented himself as a reputable homebuilder and defrauded Delaware homebuyers out of thousands of dollars. Kendall claimed, among other things, that he had over 20 years of experience building quality homes with his company, Kendall Construction Co. Kendall touted a list of prior happy homebuyers as a reference. Relying on those representations, numerous homebuyers in Delaware paid money to Kendall to obtain custom-built homes in 1992–1994.

After taking their money and beginning work, Kendall abandoned construction of the homes. In all, Kendall left seven sets of Delaware homebuyers with defective, incomplete houses after each had paid Kendall tens of thousands of dollars. In addition, numerous banks, subcontractors, and suppliers who had furnished money or materials to Kendall remained unpaid when he abandoned the projects. In 1995, Kendall filed a petition in bankruptcy, thereby staying all claims against him.

As a result of the homebuyers' and creditors' dissatisfaction with Kendall's activities and performance, the Delaware authorities launched an investigation into Kendall's business. The investigation revealed that Kendall had engaged in unlawful business practices in Maryland dating back to the early 1980s.

For example, the State discovered that, between 1982 and 1984, Kendall, as J.K. Construction Co., had begun building several homes in Reistertown, Maryland. At least six homebuyers suffered losses from substandard and incomplete work and unpaid subcontractors. In all cases, Kendall failed to reimburse the homebuyers for the monies they provided him in good faith.

The investigation also revealed that in 1989, acting through Seacoast Construction Co., Kendall built a series of homes in Secretary, Maryland that were financed by Provident Bank. The homes were of extremely poor quality and failed to meet the standards of the building code. After Provident foreclosed on the houses, Seacoast filed bankruptcy in 1989. Furthermore, in 1992, Ken-

dall had pleaded guilty to a charge of federal bank fraud and was incarcerated. Kendall had declared bankruptcy in 1983, 1989, and 1995. Kendall had a bad credit report. The investigators learned that, in order to conceal this information, Kendall changed his name and social security number when he moved to Delaware in 1990.

### Admission of the Maryland Evidence as Direct Proof of Theft by False Pretense and Racketeering in Delaware

To prove that Kendall had engaged in Theft by False Pretense and Racketeering in Delaware, the State filed a motion *in limine* to introduce the evidence of Kendall's misconduct in Maryland. Over Kendall's objection, the Superior Court held that the Maryland evidence was relevant and admitted the evidence. This Court reviews for abuse of discretion the Superior Court's decision to admit evidence of prior misconduct.[1]

Kendall argues that the Superior Court abused its discretion in ruling that the Maryland evidence was admissible to prove the Delaware offenses. He contends that the Maryland evidence was not relevant to prove any material element of the offenses in Delaware and that the prejudice of the evidence far outweighed any possible probative value. Rather, Kendall argues, the focus of the inquiry should have been on his intent at the time he dealt with his Delaware customers. We disagree.

Kendall's misrepresentations to the Delaware homebuyers were belied by the truth of his past. Kendall's conduct with the Delaware homebuyers followed the precise pattern he had used to victimize homebuyers and others in Maryland during the 1980s.

As he did in Delaware, in Maryland Kendall would obtain money, start construction, build incomplete and defective structures, abandon the projects, and declare bankruptcy, thereby providing him with a "clean slate." Moreover, Kendall affirmatively concealed his misconduct in Maryland by changing his name and Social Security number when he moved to Delaware.

The Superior Court properly admitted the Maryland evidence as direct proof of Theft by False Pretense because Kendall intentionally created a false impression as to his past conduct in order to affect adversely his victims' judgment of their dealings with him.[2] The State proved not only that Kendall failed to disclose his sordid past to the Delaware homebuyers, but also that he affirmatively misrepresented his business history. At trial, the jury heard the testimony of an expert custom homebuilder who stated, with regard to marketing new homebuilding, that "[t]he company's track record is probably, more than anything else, paramount to identifying yourself in the eyes of a buyer that you're dealing with as your ability to do the job." When he solicited the homebuyers' business, Kendall was aware of the importance of reputation and he knew that he had a poor record as a homebuilder. Nevertheless, he deliberately concealed his past and made affirmative misrepresentations so as to secure contracts for seven sets of Delaware homebuyers.

Kendall's false statements and omissions induced the homebuyers to part with their money and to entrust the building of their homes to Kendall. Under D.R.E. 402, Kendall's misstatements and omissions were relevant and material.[3] Indeed, the homebuyers

---

1. See *Getz v. State,* Del.Supr., 538 A.2d 726, 734 (1988).

2. 11 *Del.C.* § 843 defines Theft by False Pretense as when a person, with the intent to deprive another of his property,

> obtains property of another person by intentionally creating or reinforcing a false impression as to a present or past fact, or by preventing the other person from acquiring information which would adversely affect the other person's judgment of a transaction.

11 *Del.C.* § 843.

3. D.R.E. 402 provides:

> *Relevant evidence generally admissible; irrelevant evidence inadmissible.*
>
> All relevant evidence is admissible, except as otherwise provided by statute or by these rules or by other rules applicable in the courts of this State. Evidence which is not relevant is not admissible.

D.R.E. 402. *See also Hubbard v. Hibbard Brown & Co.,* Del.Supr., 633 A.2d 345, 352 n. 8 (1993) (omitted fact in securities fraud context "is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote ...").

and other victims testified that they would not have contracted with Kendall, nor paid him money, had they known of his previous misconduct in Maryland.[4] Thus, evidence of the Maryland misconduct was directly relevant and properly admitted into evidence as direct proof of an element of Theft by False Pretense.

■ The Superior Court properly admitted the Maryland evidence as direct proof of Kendall's pattern of Racketeering under 11 *Del.C.* §§ 1501–1511. Section 1503 of Title 11 makes it unlawful for "any person employed by, or associated with, any enterprise to conduct or participate in the conduct of the affairs of the enterprise *through a pattern of racketeering activity* . . . . "[5] A "pattern of racketeering" may be established by "2 or more incidents of conduct . . . [t]hat . . . constitute racketeering activity. . . . "[6] In order to show a pattern of racketeering, the State must prove that "the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity."[7] The State may establish the threat of continued criminal activity by show-

ing that "the predicate acts themselves involve threats of long-term racketeering activity, or . . . [that] the predicate acts are part of an entity's regular way of doing business."[8]

■ In the case at bar, Kendall's misconduct in Maryland was direct proof of his pattern of racketeering because it showed that Kendall's unlawful activities in Delaware were part of his "regular way of doing business."[9] That is, dating back to 1982, Kendall repeatedly obtained monies from homebuyers on the premise that he would construct a quality custom home only later to abandon the project defective and unfinished. Therefore, because he had created a scheme of improper business dealings, the Maryland evidence was admissible as direct proof of a pattern of racketeering.[10]

### Admission of the Maryland Evidence Under D.R.E. 404(b) and Getz v. State

■ The Superior Court properly admitted the Maryland evidence under D.R.E. 404(b) and *Getz v. State.*[11] D.R.E. 404(b)

---

4. *Cf. Simms–Malone v. State,* Del.Supr., No. 478, 1994, Veasey, C.J., 1996 WL 145785 (Mar. 1, 1996) (Order). Simms–Malone induced potential customers to pay fees and lease cars from her company without fulling discussing the ramifications of a "sublease program." *Id.* at ¶ 5. The sublease program was merely a device to extract up-front car payments. *See id.* While the customers thought they were receiving good title to a vehicle, in fact the vehicles suffered from encumbrances and were subject to immediate repossession by the lienholder. *See id.* The customers testified that they would not have paid the company had they known of the encumbrances. *See id.* This Court held that Simms–Malone was in a position to discuss the encumbrances with her clients but she failed to do so. *See id.* Thus, Simms–Malone created false pretenses by assuring her clients that they would receive valid title to an unencumbered vehicle. Like Simms–Malone, Kendall created and reinforced false pretenses by assuring his victims that he was a reliable builder when in fact he was not. *See also State v. Brewer,* Tenn.Crim.App., 932 S.W.2d 1, 19, *appeal denied* (July 8, 1996) (upholding conviction for theft by false pretense where defendant, as part of investment scheme, told stories of successful ventures in other states but failed to disclose the legal difficulties he encountered); *Lehmann v. State,* Wis.Supr., 39 Wis.2d 619, 159 N.W.2d 607, 610 (1968) (upholding conviction for theft by fraud where defendant gave impression he was licensed cattle

dealer but failed to disclose that the U.S. Department of Agriculture had issued cease and desist order prohibiting him from operating as livestock dealer).

5. 11 *Del.C.* § 1503 (emphasis added).

6. · 11 *Del.C.* § 1502(5).

7. *Stroik v. State,* Del.Supr., 671 A.2d 1335, 1342 (1996) (citing *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989)).

8. *U.S. v. Pelullo,* 3d Cir., 964 F.2d 193, 208 (1992) (citing *H.J. Inc.,* 492 U.S. at 242, 109 S.Ct. 2893).

9. *Id.*

10. *See U.S. v. Bertoli,* D.N.J., 854 F.Supp. 975, 1057, *aff'd in part, vacated in part,* 3d Cir., 40 F.3d 1384 (1994), *cert. denied,* 517 U.S. 1137, 116 S.Ct. 1425, 134 L.Ed.2d 548 (1996) (where crime charged requires establishment of continuing pattern of criminal activity, government may use other acts which are part of the pattern to prove the existence of the pattern without invoking Fed.R.Evid. 404(b)).

11. Del.Supr., 538 A.2d 726 (1988).

permits introduction of evidence of prior misconduct to show a defendant's intent, knowledge, and common scheme or plan.[12] Here, the State introduced the Maryland evidence to prove Kendall's criminal intent to steal from the homebuyers and others, his knowledge of how to carry out the Delaware misconduct, and his common scheme dating back to 1982.

■ This Court reviews for abuse of discretion the Superior Court's decision to admit evidence of prior misconduct under D.R.E. 404(b).[13] In order to admit D.R.E. 404(b) evidence, the trial court must consider six factors: (1) the evidence must be material to an issue or ultimate fact in dispute; (2) the "evidence must be introduced for a purpose sanctioned by Rule 404(b)" or some other non-propensity purpose; (3) the evidence proving the prior bad act must be plain, clear, and conclusive; (4) the bad act must not be too remote in time from the charged offense; (5) the probative value of the evidence must not be outweighed by the danger of unfair prejudice; and (6) the court must give the jury a limiting instruction.[14] The Superior Court properly exercised its discretion in admitting the Maryland evidence under D.R.E. 404(b).

First, the Maryland evidence was material to the charge of Theft. The State sought its admission to prove Kendall's criminal intent in three Theft counts: intent to deprive or appropriate the property of another, 11 Del.C. § 841(a); intent to create or reinforce a false impression, 11 Del.C. § 843; or intent not to engage in the promised future conduct, 11 Del.C. § 844. Kendall's past misconduct was relevant to prove that his actions in Delaware were not accidental, unintended, or simply products of business risk beyond his control, but were in fact intentional actions.[15] Also, the court properly admitted the Maryland evidence, which was unique in nature, "to reveal the common pattern of a crime that is not commonplace."[16] Thus, the Maryland evidence was admitted for a purpose sanctioned by D.R.E. 404(b).[17]

Second, the Maryland evidence was plain, clear, and conclusive evidence. The State presented the direct testimony of eyewitnesses and homebuyers with personal knowledge of the events. The testimony of eyewitnesses to a defendant's prior bad acts may constitute plain and clear evidence.[18]

■ Third, the bad acts in Maryland were not too remote in time. Evidence is too remote in time "only where there is no visible, plain, or necessary connection between it and the proposition eventually to be proved."[19] Here, the events beginning in Maryland in 1982 demonstrated the same pattern of misconduct occurring in the late 1980s and in the charged offenses in Kent County, Delaware in 1992–94. We recognize that this Court in the past has analogized the "too-remote" factor in Getz to the ten-year time limit contained in D.R.E. 609(b) governing impeachment by evidence of conviction of a crime.[20] But we have noted that this is not

12. See D.R.E. 404(b); Getz, 538 A.2d at 730. D.R.E. 404(b) provides:
   Other crimes, wrongs or acts: Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity of absence of mistake or accident.
   D.R.E. 404(b) (emphasis in original).

13. See Getz, 538 A.2d at 734.

14. Id.

15. See, e.g., Snowden v. State, Del.Supr., 677 A.2d 33, 39 (1996) (allowing admission of prior conviction because it showed absence of accident).

16. U.S. v. Scop, 7th Cir., 940 F.2d 1004, 1009 (1991) (citation omitted).

17. See Getz, 538 A.2d at 734.

18. See Diaz v. State, Del.Supr., 508 A.2d 861, 865 (1986).

19. Lloyd v. State, Del.Supr., No. 239, 1990, Walsh, J., 1991 WL 247737 (Nov. 6, 1991), Order at ¶ 6 (citing N.L.R.B. v. Ed Chandler Ford, Inc ., 9th Cir., 718 F.2d 892, 893 (1983)).

20. See Trowbridge v. State, Del.Supr., 647 A.2d 1076, 1078 (1994) (trial court's admission of juvenile conviction for starting fire that was 12 years old was abuse of discretion where defendant was on trial for murder).

a bright line rule.[21] The evidence at bar demonstrates a *continuous* flow of related illicit activity spanning nearly 12 years. Therefore, when viewed in its entirety, the Maryland misconduct was not too remote in time to meet the *Getz* factors.

Fourth, because the Maryland evidence was highly probative of Kendall's intent, knowledge, and his common scheme, Kendall was not unfairly prejudiced by its admission into evidence. Indeed, Kendall's failure to disclose his prior actions was part and parcel of his crime of Theft by False Pretense. Thus, under D.R.E. 403, the Superior Court properly admitted the Maryland evidence.[22]

Finally, the court twice gave proper cautionary instructions to the jury on the issue of the Maryland evidence: once at the beginning of trial and again directly prior to the admission of the evidence. At Kendall's request, the court did not give an instruction stating the limited purpose of admissibility. Thus, by adhering to all of the *Getz* factors, the Superior Court did not abuse its discretion in admitting the Maryland evidence under D.R.E. 404(b).

### *Conclusion*

We affirm the decision of the Superior Court to admit the Maryland evidence as direct proof of Theft by False Pretense and of a pattern of Racketeering. We also affirm the decision of the Superior Court on the ground that D.R.E. 404(b) permits introduction of evidence of prior misconduct to show a defendant's intent, knowledge, and common scheme or plan. Accordingly, the judgment of the Superior Court is affirmed.

---

**21.** *See id.*

**22.** D.R.E. 403 provides:
*Exclusion of relevant evidence on grounds of prejudice, confusion or waste of time.*
    Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence.
D.R.E. 403.