Tyrone TAYLOR, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 64,2000.

Supreme Court of Delaware.

Submitted: June 26, 2001.
Decided: Aug. 2, 2001.

Sandra W. Dean, Camden, Delaware, for Appellant.

John Williams, Department of Justice, Dover, Delaware, for Appellee.

Before VEASEY, Chief Justice, WALSH, HOLLAND, BERGER and STEELE, Justices.

STEELE, Justice for the Majority:

On September 23, 1999, a Superior Court jury found Tyrone L. Taylor, Appellant, Defendant–Below, guilty of eleven drug-related charges including intent to deliver cocaine. Taylor filed a timely notice of appeal. Taylor argues that the trial court abused its discretion when it admitted: two prior drug-related convictions during the State's case-in-chief; the testimony of a police officer regarding his observations of the area outside Taylor's home; and, the cocaine Taylor allegedly sold. We find that admitting Taylor's prior convictions during the State's case-in-chief unfairly prejudiced his right to present an entrapment defense and thus significantly undermines our confidence in the outcome of the trial. Further, the trial court's failure to hold consideration of the

relevance of the remoteness of certain prior·convictions until the evidence on predisposition could be reviewed under all of the circumstances surrounding the alleged offense compels us to reverse the judgment of the Superior Court and remand this case for a new trial.

## I

On March 9, 1999, a confidential police informant arranged a drug transaction between Taylor and an undercover police officer. After the informant contacted Taylor, the informant and the officer went to Taylor's home where the officer expressed an interest in purchasing cocaine. Taylor sold the officer crack cocaine for twenty dollars. On March 19, 1999, the officer returned to Taylor's home to purchase more cocaine, but Taylor refused to sell the officer cocaine because the informant was not present. On March 25, 1999, police arrested Taylor. During a search of Taylor's home the police discovered several items of paraphernalia such as scales, baking soda and glass vials. Police also discovered marijuana and $314 cash. A jury convicted Taylor of eleven counts of possession, manufacture, delivery and distribution of controlled substances under 11 *Del. C.* §§ 4751, 4755, 4767. The State filed a motion to sentence Taylor as an habitual offender under 11 *Del. C.* 4214(b) because of two earlier drug convictions. The trial court granted the State's motion and sentenced Taylor to life imprisonment.

## II

This Court first heard oral argument in this case on December 12, 2000. The Court issued an order on February 28, 2001 requesting supplemental briefing on three issues: (1) whether Taylor objected to the State's introduction of evidence of

his prior convictions during its case-in-chief; (2) whether evidence of the defendant's prior bad acts should be admissible under D.R.E. during the State's case-in-chief to rebut reasonably anticipated defense arguments;[1] and (3) whether the convictions in this case were too remote in time to be relevant to Taylor's predisposition at the time of the transaction.[2]

This case raises two issues concerning evidence of a defendant's prior bad acts. First, we determine whether evidence of a defendant's prior bad acts may be admissible during the State's case-in-chief to rebut anticipated evidence supporting elements of an affirmative defense. This issue requires us to consider relevant language in *Getz v. State*,[3] regarding the introduction of prior bad act evidence during the State's case-in-chief in light of the Court's recent decisions in *Milligan v. State*[4] and *Cobb v. State*.[5] Second, we determine whether Taylor's two drug convictions in 1990 and 1993 were too remote in time to be relevant to his alleged predisposition to sell drugs at the time of the 1999 drug transaction.

■ At trial, Taylor objected to the admission of his two prior drug convictions because they were too remote in time from the March 1999 transaction to be relevant

and because their admission unfairly prejudiced him by preventing the jury from fairly considering his credibility on the relevant issue of predisposition. The record does not reflect, however, that Taylor objected specifically to the State's request to introduce the convictions as part of its case-in-chief.

A review of the transcript of counsels' argument concerning the admission of Taylor's prior convictions suggests that the parties and the court operated on the implicit assumption that, under *Getz*, the State could offer evidence in its case-in-chief to rebut an anticipated entrapment defense.[6] *Getz* does not explicitly distinguish between evidence offered in the State's case-in-chief to rebut a reasonably anticipated affirmative defense and that offered to support an issue which must be established in the State's own case. *Milligan* and *Cobb* were not decided until after Taylor's trial. Therefore, the defense had no clear, discrete legal basis to object to the admission of Taylor's earlier convictions during the State's case-in-chief. We conclude that Taylor's general objection to the admission of his earlier convictions sufficiently preserved the question for appeal.[7]

1. This issue requires us to reconsider language in *Getz v. State*, 538 A.2d 726, 734 (1988) based on two recent decisions in *Milligan v. State*, Del.Supr., 761 A.2d 6 (2000) and *Cobb v. State*, Del.Supr., 765 A.2d 1252, Veasey, C.J. (2001) regarding the introduction of prior bad act evidence during the State's case-in-chief where the State can "demonstrate the existence, or reasonable anticipation, of such a material issue."

2. *See Taylor v. State*, Del.Supr., No. 64, 2000, Veasey, C.J. (Feb. 28, 2001) (ORDER).

3. 538 A.2d 726, 734 (1988).

4. Del.Supr., 761 A.2d 6 (2000).

5. Del.Supr., 765 A.2d 1252 (2001).

6. For example, defense counsel stated: "Now, we understand that in a[sic] entrapment defense, that that's why we are having this argument, because we are using an entrapment defense ...." Appx. to Appellant's Op. Br. at A–31. Similarly, in its ruling, the court noted that: "Under Rule 404(a)(1), ... when the defendant offers evidence of a pertinent trait of his character, which I think they are doing here by electing the entrapment defense, then the prosecution does have the right to rebut that." *Id.* at A–34.

7. The State's citation to *State v. Porter*, Del.Super., 587 A.2d 188, (1990) is mistaken because the Superior Court's opinion does not refer to a specific defense objection to the admission of the contested evidence in the

*Getz* established six guidelines for the admission of other crimes evidence against a criminal defendant. The first of these guidelines requires that:

> The evidence of other crimes must be material to an issue or ultimate fact in dispute in the case. If the State elects to present such evidence in its case-in-chief it must demonstrate the existence, or reasonable anticipation, of such a material issue.[8]

Under *Getz*, the State may introduce evidence of a defendant's other crimes during its case-in-chief if: the bad acts have independent logical relevance to an ultimate issue in the case; and, the State reasonably anticipates that the issue will arise.[9]

In *Milligan v. State*[10] we clarified this analysis. In *Milligan*, the defense indicated before trial that it intended to impeach the complainant's testimony concerning an alleged sexual offense by highlighting the delay between the alleged incident and her decision to report the incident. In response to this anticipated argument, the

State offered evidence in its case-in-chief of a later incident involving the defendant and the complainant to explain what triggered the delayed decision to report. The trial court admitted evidence of the later incident, in part because "it provided an explanation for the 'victim's' late reporting without which the jury could be misled or confused."[11]

On appeal, we held that it was "premature" to admit evidence of the defendant's uncharged bad act during the State's case-in-chief to rebut the defendant's anticipated "late reporting" argument: "While the defense did acknowledge that 'late reporting' would be made an issue in its case and would be mentioned in its opening, 'late reporting' bore no reasonable relationship to an issue or ultimate fact to be proved in the State's case-in-chief."[12] We concluded that "the State had no basis to seek admission of the later bad acts to explain 'late reporting' until rebuttal," and "only after *Milligan* had in fact introduced evidence

---

State's case-in-chief. Instead, the court indicated that its decision was in response to a defense objection to "to any statements the State intends to offer concerning hearsay statements ... containing alleged death threats directed to her by the defendant." Based on case law from other jurisdictions, the court concluded that such evidence is admissible only "admitted in rebuttal after evidence of accident, self-defense, suicide or extreme emotional distress has been presented by the defense." *Id.* at 193. *See* Supr. Ct. R. 8.

**8.** *See Getz*, 538 A.2d at 734; *see also Cobb v. State*, Del.Supr., 765 A.2d 1252, 1254 (2001) ("As we have held, the State may introduce bad acts evidence that 'is material to an issue or ultimate fact in dispute in the case' as part of its case-in-chief if it demonstrates 'the existence, or reasonable anticipation, of such a material issue.' ") (quoting *Getz*, 538 A.2d at 734).

**9.** *See Deshields v. State*, Del.Supr., 706 A.2d 502, 507 (1998) ("[I]f other crime evidence is admitted during the State's case-in-chief to

prove the charged offense, it must have independent logical relevance and the jury should be carefully instructed regarding the limited purpose for which it can be considered.") (citing *Getz*, 538 A.2d at 730–31, 734).

**10.** 761 A.2d at 8.

**11.** *Id.*

**12.** *Id.* Among the cases cited by the State to support its argument that the State is entitled to offer evidence in its case-in-chief to rebut anticipated defense arguments is *United States v. Miller*, D.C.Cir., 895 F.2d 1431, 1435 n. 9 (1990). In *Miller*, the D.C. Circuit permitted the government to introduce evidence of the defendant's prior bad acts during its case-in-chief in order to impeach witness testimony implicating the defendant in a check-forging scheme. Although the court did not specify the rationale for its decision, the holding in *Miller* runs counter to this Court's decision in *Milligan*.

of 'late reporting'" to impeach the complainant's testimony.[13]

▆▆▆ In order to introduce evidence of other crimes in the State's case-in-chief, those crimes must be logically relevant not just to "an issue or ultimate fact in dispute in the case,"[14] but to "to an issue or ultimate fact *to be proved in the State's case-in-chief.*" This language identifies a distinction between bad act evidence that is offered to prove an element of the State's *prima facie* case and bad act evidence that is offered to rebut an issue, dispute of fact or element of a defense, that might reasonably be raised in the defendant's case. Under this formulation of the *Getz* rule, the State may offer evidence of the defendant's bad acts only if: (1) the evidence is independently relevant to an element of the State's *prima facie* case (for example, knowledge or intent) and (2) the State reasonably anticipates that the defendant will dispute that element of its case.[15]

Our holding in *Milligan* does no more than clarify what was implicit in the *Getz* Court's analysis. Indeed, the *Getz* Court noted that "the State presented the other sexual misconduct evidence in its case-in-chief and must justify its use at that time and not on the basis of whether the defendant might later offer evidence of his own

---

**13.** *Milligan*, 761 A.2d at 8.

**14.** *Getz*, 538 A.2d at 734.

**15.** All but two of the cases cited by the State (which are discussed *supra* note 12 and *infra* note 24), are consistent with a rule permitting the prosecution to introduce evidence of the defendant's prior bad acts during the State's case-in-chief only where the evidence is related to the prosecution's *prima facie* case. *See, e.g., United States v. Burchinal,* 8th Cir., 657 F.2d 985, 993 (1981) ("Where intent or guilty knowledge are elements of the crime charged, evidence of other crimes or acts tending to establish those elements is generally admissible. Furthermore, '(t)he government need not await the defendant's denial of intent before offering evidence of similar acts relevant to that issue.'") (citations omitted); *United States v. Mills,* 2nd Cir., 895 F.2d 897, 907 (1990) (finding that the trial court properly admitted evidence of prior crimes during the State's case-in-chief to prove the defendant's intent to counterfeit because the defendant "raised the issue of intent in his opening to the jury"); *United States v. Hooton,* 9th Cir., 662 F.2d 628, 635 (1981) ("[E]ven in general intent crimes, the government can offer evidence of other acts as part of its case-in-chief when it is obvious that the defense will raise lack of intent as a defense."); *United States v. Cohen,* 2nd Cir., 489 F.2d 945, 950 (1973) ("[S]ince appellant had in his opening statement put into issue his motive and intent to commit the crimes charged, evidence of prior similar acts and involvement on appellant's part in allegedly illegal JDL activities was admissible on this issue [during the government's case-in-chief].''); *United States v. Escobar,* 8th Cir., 50 F.3d 1414, 1422 (1995) (finding that evidence of defendant's bad acts was admissible during the government's case-in-chief because the evidence was relevant to the defendant's intent); *United States v. Aranda,* 8th Cir., 963 F.2d 211, 215 (1992) ("[T]he [prior bad act] evidence was relevant to show the plan of the conspiracy, and thus its existence, and to show that Aranda knowingly and purposefully participated in this conspiracy . . . . to establish a violation of 21 U.S.C. § 846."); *United States v. Evans,* 8th Cir., 697 F.2d 240, 248 n. 8 (1983) ("Contrary to Evans' assertion the government is entitled to put this evidence on in anticipation of a defense of lack of intent."); *Foy v. State,* Tex. Crim.App., 593 S.W.2d 707, 709 (1980) ("[W]e hold that evidence of prior extraneous offenses committed against the victim of the offense charged, and indicating the existence of ill will or hostility toward the victim, is admissible as part of the State's case in chief as circumstantial evidence of the existence of a motive for committing the offense charged."); *Thompson v. United States,* D.C. Ct.App., 546 A.2d 414, 423–24 & n. 16 (1988) (holding that "the government may not be permitted to introduce other crimes evidence in its case in chief to prove intent" unless the defense disputes intent during opening statements).

character." [16] In *Getz*, the Court justified the admission of evidence of the defendant's prior bad acts during the State's case-in-chief in part because, "[w]hile certainly the better practice is for the State to present such evidence on cross-examination or in rebuttal, the prosecutor is not clairvoyant and has no assurance that the defendant will necessarily supply the predicate issue." [17]

This rationale supports the admission of bad act evidence in the State's case-in-chief only if there is some concern that the State will not have an appropriate opportunity to present the evidence as part of its rebuttal case. [18] To require the State to present relevant bad act evidence only in rebuttal when a defendant indicates that he plans to challenge an element of the charged crime creates an unfair burden upon the State because the State's evidence on this element of its *prima facie*

case may appear disjointed and out-of-context. Similarly, where the defense elects not to present evidence, the State will not have an opportunity to present the evidence in rebuttal at all despite the fact that the evidence is relevant to its *prima facie* case.

In contrast, when a defendant decides to present an affirmative defense that must be proved by a preponderance of the evidence, [19] there is no concern that waiting to present the bad act evidence until rebuttal will leave the State's case-in-chief incomplete because, until the defense presents its case, there is no argument for the State to rebut. [20] One would not be concerned that the defendant will not "supply the predicate issue" because the defendant is required to present some evidence to carry its burden of proof. [21] Moreover, the premature admission of bad act evidence to rebut an anticipated affirmative defense

16. *See Getz*, 538 A.2d at 732.

17. *Id.* at 731.

18. In *Getz*, the Court held that evidence of the defendant's alleged uncharged sexual contact with the victim was not relevant to the defendant's motive, intent, or common scheme to commit the crime charged. *See Getz*, 538 A.2d at 732–34. In rejecting a proposed "sexual gratification" exception to Rule 404(b) in incest cases, the Court noted that other courts have criticized this exception because "such evidence bears upon an issue which is not an element of the offense and concerning which the State has no burden." *Id.* at 733.

19. *See* 11 *Del. C.* § 304.

20. In *Deshields*, 706 A.2d at 507, for example, the State offered evidence of the defendant's use of a deadly weapon in a prior crime to prove that the defendant "display[ed] what appear[ed] to be a deadly weapon" as part of the State's *prima facie* case against the defendant for first degree robbery. The Court held that the prior crime evidence was inadmissible in the State's case-in-chief because it was not independently relevant to this element of

first degree robbery—particularly since the victim's testimony presented sufficient direct testimony to satisfy the State's burden with respect to that element. *See id.* at 507–08. The Second Circuit has likewise noted that "it is usually preferable for the trial court to await the conclusion of the defendant's case before admitting similar act evidence" because "the court will best be able to judge the prosecutor's need for the evidence after the defense; at that time the court may best weigh the probative value of the evidence against its prejudicial effect." *United States v. Danzey*, 2nd Cir., 594 F.2d 905, 912 (1979). The Second Circuit in *Danzey* went on to note that prior bad act evidence was nevertheless admissible in that case because "it was abundantly clear to the trial judge before the case began that the only major issue was the identity of the robbers." *Id.*

21. Similarly, if the defense indicates that it will present evidence during its case to impeach the testimony of a State witness (as in *Milligan* and *Cobb* ), there is no concern that the State will not have the "predicate issue" to justify offering further evidence to refute the defense evidence during the State's rebuttal case.

may effectively lock the defense into making an undesirable argument that defense counsel had tentatively raised during opening statements. If the defendant no longer wishes to pursue the argument at trial, the premature admission of bad act evidence to rebut that argument presents the defendant with a Hobson's choice. The defendant must either present an argument that the defendant no longer finds tenable in order to deflect the impact of the bad act evidence or decline to present the argument and find another way to limit the damage done by the bad act evidence. In fairness, this choice cannot be forced upon the defendant by the State's prejudicial structuring of its case-in-chief.

■■■■ We hold that the State may introduce evidence of a defendant's other crimes in its case-in-chief only where that evidence is independently relevant to an issue or fact that the State must prove as part of its *prima facie* case. Applying this rule to the present case, Taylor had not yet presented evidence supporting the affirmative defense of entrapment [22] when

Taylor's two prior convictions were admitted during the State's case-in-chief.[23] As a consequence, the trial court erred when it admitted Taylor's earlier convictions during the State's case-in-chief. The State was permitted prematurely to rebut an anticipated defense argument during its case-in-chief with evidence that was not independently relevant to an issue that the State was required to establish as part of its *prima facie* case against Taylor. .

■■■■ Having concluded that the trial court erred by admitting Taylor's prior convictions during the State's case-in-chief, we next address whether this error mandates a new trial.[24] The admission of Taylor's convictions during the State's case-in-chief prejudiced Taylor in three respects. First, premature admission of the convictions permitted the State to negate Taylor's entrapment defense by steeling the jury's mind about predisposition before Taylor had an opportunity to present his evidence supporting a lack of predisposition to commit the offense. By doing so, the State effectively placed on Taylor the

22. The legislature has established entrapment as an affirmative defense with the concomitant burden of proof on the defendant rather than as an element of an offense to be negated in the State's *prima facie* case. *See* 11 *Del. C.* § 432(a).

23. Arguments by counsel during opening statements and summation are not evidence and thus cannot be said to raise an affirmative defense. *Cf. Milligan* 761 A.2d at 8 (holding that evidence of a later sexual encounter that triggered the delayed report was admissible "only after *Milligan* had in fact introduced evidence of 'late reporting' " to impeach the victim's testimony).

24. *Cf. United States v. Bailey*, D.C.Cir., 505 F.2d 417, 420–21 (1974) (finding that trial court should have required a proffer of the prosecution evidence of the defendant's prior crimes in part because the trial court should determine "whether it might be more desir-

able to defer admitting the evidence until the government's rebuttal" but finding that the court's error was harmless). The Seventh Circuit has rejected a rule requiring the prosecution to present bad act evidence in rebuttal, holding that "[w]hen the entrapment defense is clearly raised in the defense's opening statement and the entrapment defense obviously materializes through a defendant's presentation of its own witnesses or through cross-examination of the government's witnesses, it is not error for the government to present evidence of predisposition in its case-in-chief." *United States v. Goodapple*, 7th Cir., 958 F.2d 1402, 1407 (1992). The Seventh Circuit thus permits the prosecution to present evidence to rebut an entrapment defense so long as the defendant eventually presents the entrapment defense. *See id.* (distinguishing a case in which the prosecution offered bad act evidence to rebut an anticipated entrapment defense "that never actually materialized").

additional burden—beyond merely proving his entrapment case—of overcoming the damage to his credibility in the minds of the jurors. Second, the trial court effectively precluded itself from a fair consideration of the relevance of the remoteness of the prior offenses and their significance to Taylor's ultimate claims of efforts at rehabilitation which were arguably inconsistent with a predisposition to sell drugs when it allowed the State to introduce the other crimes in its case in-chief. Third, presenting evidence out of logical order makes it difficult for the jurors to draw reasonable inferences from the evidence and to apply them to the law. When jurors hear the State's rebuttal evidence of other crimes before they hear and can understand the defense evidence in support of entrapment it is far more likely that they will use that evidence to conclude that a defendant is "a bad person" rather than comprehend its relevance to the charges or the affirmative defense.

In addition, the approach in this case is particularly damaging to the defense where, as here, the affirmative defense requires that Taylor admit to the conduct that constitutes the offense. Since Taylor admitted that he sold the cocaine to the undercover officer, his entire case rested on a fair opportunity to be heard on his affirmative defense of entrapment. Admitting damaging evidence directed at his credibility during the State's case-in-chief, but totally unnecessary to the State's need to establish the issues and elements of its own case, unfairly weakened Taylor's only opportunity to be heard by a jury with an open mind and raises serious concerns about the fairness of his trial. By under-

cutting Taylor's entrapment defense before he presented it, the State unfairly enhanced Taylor's burden of proving that he would not be disposed to sell drugs before the police enticed him to do so. In view of these concerns, the trial court's erroneous admission of his convictions during the State's case-in-chief unfairly prejudiced Taylor, and a new trial is required.

To provide guidance to the Superior Court on remand, we next address whether Taylor's 1990 and 1993 drug convictions are admissible in the State's *rebuttal case* to refute Taylor's argument that he was not "otherwise disposed" to sell cocaine to the undercover police officer in March 1999.

■ In this context, the *Getz* requirements bear repeating. The evidence of the other crimes must be (1) "material to an issue or ultimate fact in dispute," (2) admissible under D.R.E. 404(b), (3) proved by clear and convincing evidence, (4) not too remote from the crime charged, (5) not unfairly prejudicial under D.R.E. 403, and (6) accompanied by a limiting instruction.[25] In the present case, the State sought to counter Taylor's entrapment defense by introducing Taylor's 1990 and 1993 drug convictions for the purpose of negating Taylor's anticipated claim that he would not be disposed to sell cocaine in March 1999.

Applying the *Getz* framework to this case, the State offered Taylor's prior convictions to rebut Taylor's anticipated entrapment defense under 11 *Del. C.* § 432(a)[26] because drug-related convictions may tend to show that Taylor was already "disposed to" sell crack cocaine

---

25. *Getz,* 538 A.2d at 734.

26. 11 *Del. C.* § 432(a) provides: "it is an affirmative defense that the accused engaged in the proscribed conduct because the accused was induced by a law-enforcement offi-

cial or the law-enforcement official's agent ... to engage in the proscribed conduct ... when such person is not otherwise disposed to do so."

when the police informant arranged the transaction. As a result, the convictions are arguably related to a central issue in dispute. Under the second factor, the convictions were admitted for a proper purpose under 404(b) because the State offered them not to prove that Taylor is a bad person but to prove that he was predisposed to complete the drug transaction.[27] Third, the State proved the convictions with clear and convincing evidence from uncontested certified copies of the convictions. In addition, the court properly instructed the jury on the limited purpose for which they could consider the evidence when the court presented the convictions to the jury.[28]

█ The remaining issue concerns whether Taylor's convictions were too remote in time to be relevant to his predisposition to sell cocaine at the time of the transaction. Under the *Getz* analysis, the "remoteness concern" bears on whether the other crimes are sufficiently relevant to a material issue.[29] As a general matter,

"[e]vidence is too remote in time 'only where there is no visible, plain, or necessary connection between it and the proposition eventually to be proved.'"[30] To assist in this determination, "courts tend to analogize [the remoteness prong in *Getz*] to the 10 year time limit contained in Rule 609(b) governing impeachment by evidence of conviction of a crime."[31] As a consequence, this Court has generally endorsed the admission of prior convictions under *Getz* where the convictions preceded the charged crime by less than ten years.[32] The State therefore argues that the Court should follow the standard ten-year guideline in this case and should reject Taylor's remoteness argument.

As appealing as bright line rules generally are for their ease of application, evidence of "predisposition" in entrapment cases, however, presents an issue that the generic *Getz* remoteness analysis does not contemplate. This Court held in *Harrison v. State* that "the point of reference for ascertaining the predisposition of a defen-

---

27. Although D.R.E. 404(b) does not explicitly permit evidence of prior bad acts to prove predisposition, the list of permissible uses in Rule 404(b) is not exclusive. *See Smith v. State*, Del.Supr., 669 A.2d 1, 5 (1995) ("This list offers examples of purposes for which evidence of prior wrongs could be admitted; it is not exclusive.") (citations omitted). Other states have determined that Rule 404(b) covers evidence that is relevant to the defendant's predisposition at the time of the crime. *See, e.g., State v. DeWolfe*, 121 R.I. 676, 402 A.2d 740, 744 (1979) (affirming admission of prior drug sales to prove predisposition to engage in drug offense); *State v. Dolce*, 41 N.J. 422, 197 A.2d 185, 191 (1964) ("Predisposition is evidenced by previous conviction of crime, reputation for criminal activities ...."); *State v. Shuck*, Tenn.Supr., 953 S.W.2d 662, 670 (1997) ("Factors relevant to determining a defendant's predisposition include the character or reputation of the defendant, including any prior criminal record....").

28. Specifically, the court instructed the jury that the convictions "are introduced solely as they may relate in your deliberations to the defense of entrapment ...."

29. *Allen v. State*, Del.Supr., 644 A.2d 982, 988 (1994).

30. *Kendall v. State*, Del.Supr., 726 A.2d 1191, 1195 (1999) (quoting *Lloyd v. State*, Del.Supr., No. 239, 1990, Walsh, J. (Nov. 6, 1991), Order at ¶ 6).

31. *Trowbridge v. State*, Del.Supr., 647 A.2d 1076, 1078 (1994) (citations omitted).

32. *See, e.g., Santini v. State*, Del.Supr., No. 88, 1994, Berger, J. (July 7, 1995) (ORDER), Order at ¶ 11 (affirming decision to admit 1985 conviction for possession with intent to deliver heroin during trial for 1992 cocaine trafficking charges); *Moorhead v. State*, Del. Supr., 638 A.2d 52, 54–55 (1994) (affirming decision to admit DUI convictions between three and six years before charges of second-degree murder by automobile).

dant to commit a particular crime is the time period extending from just before the State's solicitation to just before the defendant's commission of the crime."[33] This assertion suggests that evidence of predisposition in an entrapment case should be relatively close in time to the crime charged.

■■■■ The holding in *Harrison* does not contemplate a "bright line test for the remoteness factor."[34] Rather, a trial court should consider the nature of the proposition that the evidence is intended to prove or disprove in determining whether a particular piece of evidence is too temporally remote from the charged crime.[35] Where the defendant presents an entrapment defense, the trial court necessarily has discretion to determine whether the defendant's earlier convictions are too remote to be relevant to the defendant's

predisposition at the time of the alleged offense, but the court must keep in mind that the relevant time period for determining the defendant's "predisposition" is relatively limited.[36] Moreover, there is greater concern about remoteness where, as in this case, the defendant alleges attempts at rehabilitation between the time of the convictions and the time of the charged offense.

Given that the focus is on whether Taylor was predisposed to engage in a drug transaction with the police informant, the drug-related convictions in 1990 and 1993 may be too remote to be relevant to the 1999 transaction at issue in this case. In addition, Taylor testified that he had participated in a drug-counseling program in 1995 and that he did not return to drug use until April 1998.[37] These intervening

---

**33.** Del.Supr., 442 A.2d 1377, 1386 (1982); *see also Atkins v. State*, Del.Supr., 523 A.2d 539, 547 (1987) (citing *Harrison* with approval); *cf. United States v. Catanzaro*, 3rd Cir., 407 F.2d 998, 1001 (1969) ("The basic question in an alleged entrapment case is whether the accused was ready and willing to commit the crime if an opportunity should be presented, or whether a person not otherwise disposed to wrongdoing was corrupted by some over-reaching or special inducement, often amounting to reprehensible conduct, by public officers or those acting in concert with them.").

**34.** *Allen v. State*, Del.Supr., 644 A.2d 982, 988 (1994); *see also Kendall v. State*, Del.Supr., 726 A.2d 1191, 1195–96 (1999) ("We recognize that this Court in the past has analogized the 'too-remote' factor in *Getz* to the ten-year time limit contained in D.R.E. 609(b) governing impeachment by evidence of conviction of a crime. But we have noted that this is not a bright line rule.") (footnotes omitted).

**35.** *Cf. Allen*, 644 A.2d at 988 (endorsing a "sliding scale" approach balancing remoteness with relevance).

**36.** *Cf. United States v. White*, 6th Cir., 390 F.2d 405, 406 (1968) ("[E]ven if the arrest without prosecution and conviction were pro-

bative of prior illegal narcotic activity, the episode occurred eight years before the acts charged in the indictment ... [and] was not only probative of nothing relevant but was also too remote [to prove the defendant's predisposition]." ) (citing *Sherman v. United States*, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958)). This rule is consistent with the holding in *Kendall*, 726 A.2d at 1195, because the rule acknowledges that the remoteness inquiry depends on the nature of the issue to be proved. In *Kendall*, the Court found a twelve-year-old conviction relevant because it established a pattern of activity that was relevant "to prove Kendall's criminal intent to steal from the homebuyers and others" because the evidence "demonstrate[d] a continuous flow of related illicit activity spanning nearly 12 years." *Id.* at 1195–96. Whereas the "pattern of racketeering" that the State sought to prove in *Kendall* required evidence of misconduct that is more than ten years old, similarly remote convictions are not necessarily relevant to a defendant's predisposition at the time of a specific transaction.

**37.** *Cf. Sherman v. United States*, 356 U.S. 369, 375–76, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958) ("[A] nine-year-old sales conviction and a five-year-old possession conviction are insufficient to prove petitioner had a readiness to sell

events, together with the length of time between Taylor's previous convictions and the present charges are factors to be considered in determining whether Taylor's 1990 and 1993 convictions may be too remote and, therefore, irrelevant to his predisposition in March 1999. On remand, the trial court should consider whether Taylor's convictions are too remote to be relevant to Taylor's predisposition in March 1999 and wait to do so until both the defendant and the State have an opportunity to present all of the circumstances bearing on the issue.

## III

 Taylor next argues that the trial court erroneously admitted testimony of a police officer who testified that he "observed a lot of foot and vehicular traffic" in front of Taylor's residence and that he could "see people running or walking quite fast towards the back of [Taylor's] residence into the wooded area" as his marked police car approached.[38] In addition, the officer stated that Taylor's street is a "high crime or drug area."[39] We review the Superior Court's decisions to admit or exclude evidence for abuse of discretion.[40]

Taylor contends that the only inference that this testimony supports is that people

congregated near Taylor's house in order to purchase drugs from him. Taylor argues that this inference is improper because the officer did not see anyone enter the house and did not witness any drug transactions. The State counters and the trial court found that this testimony is relevant circumstantial evidence tending to show that Taylor regularly sold drugs from his residence and thus was predisposed to sell drugs to the undercover officer.

The primary question here is whether the jury may reasonably infer that Taylor regularly conducted drug transactions based on (1) the number of people loitering near his house, (2) the reaction of these people to an approaching police officer, and (3) the characteristics of the neighborhood. If the jury may properly infer that Taylor regularly sold drugs, the officer's testimony is relevant in determining whether Taylor was predisposed to sell drugs at the time of the March 1999 transaction.[41] The State's relevance argument, however, requires the jury to make several substantial logical leaps to reach the conclusion that Taylor regularly sold illegal drugs. The jury had to infer: (1) that people avoid approaching officers only if they are engaged in illegal conduct,[42] (2)

---

narcotics at the time Kalchinian approached him, particularly when we must assume from the record he was trying to overcome the narcotics habit at the time."). The State's attempt to distinguish *Sherman* from the present case relies primarily on facts in each case that do not relate to the remoteness of the convictions to the alleged transactions.

**38.** Appx. to Appellant's Op. Br. at A–20 to A–22.

**39.** *Id.* at A–21. The officer presented this testimony after the trial court held *voir dire* to rule on Taylor's relevance objection. The trial court held that the officer could testify about facts within his personal knowledge but that the officer could not testify about a tip he

received concerning foot traffic around Taylor's residence. (A38, B36).

**40.** *See Williamson v. State,* Del.Supr., 707 A.2d 350, 354 (1998).

**41.** D.R.E. 401 provides: " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

**42.** *But see Quarles v. State,* 696 A.2d 1334, 1341 (1997) (Veasey, C.J., dissenting) ("[T]o assume that innocent persons have no reason to fear sudden approach by police ignores the

that these persons generally congregate in high crime neighborhoods to buy or sell drugs, and (3) that these facts would generate heavy foot traffic near a drug dealer's home.

 Relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury ... or needless presentation of cumulative evidence." [43] Immediately after the officer testified, however, the trial court instructed the jury that it could consider the officer's testimony only in connection with Taylor's entrapment defense. The court's instruction effectively minimized the likelihood that the jury would improperly infer that Taylor is a bad person and thus minimized the potential for unfair prejudice to Taylor. The trial court's carefully crafted timely limiting instruction [44] was based on its broad discretion to admit or exclude evidence under D.R.E. 403. [45] Although the function of the jury is to make common sense judgments and inferences about behavior, [46] it is questionable whether this series of logical steps is too tenuous to form the basis for a reasonable inference by the jury. [47] Nevertheless, the trial court's decision to admit the officer's testimony does not defy logic nor ignore settled principles of law. Thus, we find that the trial court did not abuse its discretion by admitting the officer's testimony.

## IV

 Taylor argues that the Superior Court abused its discretion by admitting the cocaine into evidence because there were inconsistencies and irregularities in its identification. At trial, the State offered as evidence a small amount of crack cocaine that the State asserted was the subject of the transaction between Taylor and the undercover police officer. Taylor challenged the authenticity of this evidence on three grounds: (1) the conflicting testimony by State witness concerning whether the cocaine was wrapped in plastic, (2) the apparent difference between the single piece of cocaine sold by Taylor and the multiple pieces presented at trial and (3) a crossed-out address and case number on the evidence tag. When viewed together, Taylor argues, these irregularities indicate that the cocaine introduced at trial was not the cocaine that Taylor sold to the undercover officer. The trial court found (1) that the discrepancy concerning the packaging of the cocaine was the result of "faulty memory," (2) that the single piece sold by Taylor probably crumbled into multiple pieces and (3) that the irregularities on the evidence tag were simply cleri-

---

experiences of many members of minority groups.") (citations omitted).

43. D.R.E. 403.

44. *See Sawyer v. State*, Del.Supr., 634 A.2d 377, 380 (1993) (observing that testimony is less likely to undermine the fairness of the trial where the court issues an effective instruction).

45. *See Smith v. State*, Del.Supr., 560 A.2d 1004, 1007 (1989).

46. *See generally Gannett Co., Inc. v. State*, Del.Supr., 571 A.2d 735, 762 (1989) ("The jury represents the public, bringing the pub-

lic's values and common sense to bear upon the problems of justice.").

47. *See Bishop v. State*, Del.Supr., No. 257, 1990, Holland, J. (April 30, 1991) (ORDER) Order at ¶ 7 ("[The defendant's state of mind] may be shown not only by direct proof, but also by such inferences as may be reasonably drawn from the evidence adduced."); *cf. Gannett Co., Inc. v. Kanaga*, Del.Supr., 750 A.2d 1174, 1188 (2000)("While the plaintiff is entitled to the benefit of reasonable inferences from established facts, the jury cannot supply any omission by speculation or conjecture.").

cal mistakes. The trial court admitted the evidence and permitted the jury to consider these irregularities in determining the proper weight of the evidence. This Court reviews the Superior Court's determination under D.R.E. 901(a) that an offering party has properly authenticated evidence for an abuse of discretion.[48]

Under D.R.E. 901(a), a party seeking to offer evidence must first produce "evidence sufficient to support a finding that the matter in question is what the proponent claims." The State must therefore provide a "rational basis from which the jury may conclude" that the evidence offered at trial is authentic.[49] This requirement does not eliminate the "necessity of showing the chain of custody of exhibits in criminal proceedings,"[50] which "indirectly establishes the identity and integrity of the evidence by tracing its continuous whereabouts."[51] Stated differently, these rules require the State to establish "as a matter of reasonable probability" that the police did not misidentify, exchange, or tamper with the evidence offered at trial.[52]

Given this standard,[53] we find that the Superior Court did not abuse its discretion. The State presented sufficient testimony from which the jury could rationally conclude that the cocaine offered at trial was the cocaine that Taylor sold to the undercover police officer. In particular, Officer Rust testified that the undercover officer returned from Taylor's house after about twelve minutes and immediately gave Officer Rust the cocaine. Officer Rust then wrapped the cocaine in plastic and put the package in his date book. Officer Rust field tested the cocaine, placed the cocaine in a sealed envelope indicating its origin, and placed the envelope in the police safe for delivery to the medical examiner. The State also presented evidence that crack cocaine often breaks into smaller pieces when it is handled. Based on this chain-of-custody testimony, the jury could find that the cocaine evidence was authentic despite confusion about the packaging of the cocaine and the fact that the State offered multiple pieces of cocaine rather than one piece.[54]

Taylor also challenges the authenticity because the evidence tag indicated that the cocaine initially had a different case number.[55] The State counters that the irregularities on the evidence tag were simply "clerical errors." The trial court found sufficient testimony to support this. Officer Rust testified that he initially recorded the wrong address on the evidence tag and later corrected the error. Although the irregularities that Taylor has identified are

**48.** *See Demby v. State,* Del.Supr., 695 A.2d 1127, 1133 (1997).

**49.** *Whitfield v. State,* Del.Supr., 524 A.2d 13, 16 (1987) (quoting *United States v. Natale,* 2nd Cir., 526 F.2d 1160, 1173 (1975), *cert. denied* 425 U.S. 950, 96 S.Ct. 1724, 48 L.Ed.2d 193 (1976)).

**50.** D.R.E. 901 cmt.

**51.** *Whitfield v. State,* Del.Supr., 524 A.2d 13, 16 (1987).

**52.** *Id.*

**53.** *See Whitfield,* 524 A.2d at 16.

**54.** The State presented (and this Court accepted) essentially the same chain-of custody evidence in *Demby v. State,* Del.Supr., 695 A.2d 1127, 1131–32 (1997); *see also id.* at 1131 ("[T]he State must simply demonstrate an orderly process from which the trier of fact can conclude that it is improbable that the original item has been tampered with or exchanged.").

**55.** *See Whitfield,* 524 A.2d at 16 (" 'Courts need [to] exercise greater care when the issue concerns the very identity of the evidence, rather than just possible changes in its condition.' ") (quoting *United States v. Lampson,* 7th Cir., 627 F.2d 62, 65 (1980)).

cause for concern, the chain-of-custody testimony indicates a low likelihood of misidentification or tampering.[56] As a result, the trial court did not abuse its discretion in admitting the pieces of cocaine offered by the State.

### Conclusion

In conclusion, because we find that the trial court should not have admitted Taylor's two prior convictions in the State's case-in-chief and that the trial court prematurely considered whether these convictions may be too remote to be relevant to Taylor's predisposition by failing to wait until all of the actual circumstances touching on predisposition had been introduced in both the State and the defendant's cases, we reverse the judgment of the Superior Court and remand this case for a new trial.

BERGER, Justice: Dissenting.

For more than a decade, *Getz* controlled the admissibility of prior "bad acts." Until the *Milligan* decision last year, counsel and trial judges relied on *Getz* as authority for the State to introduce such evidence during its case-in-chief as long as the State could demonstrate a "reasonable anticipation" that the evidence of other crimes would be "material to an issue or ultimate fact in dispute in the case."[57] In *Milligan*, and more emphatically in this case, we have modified *Getz* by holding that the State may introduce prior bad acts evidence in its case-in-chief only if the evidence is relevant to an element of the State's *prima facie* case.

I agree with the majority that this modification to our law is reasonable and appropriate. But I cannot join in its conclusion that failure to follow this newly announced timing rule constituted prejudicial error mandating a new trial in this case. Assuming that the evidence of Taylor's prior crimes would have been admissible if presented to the jury during cross-examination of Taylor, instead of during the State's case-in-chief, the prejudice to Taylor is minimal. The majority says that, especially in a case like this, where the defendant is admitting the crime and raising an entrapment defense, there should be nothing to impair the defendant's credibility before he gets to present his defense to the jury. The majority then divines that the jury was "steeled" against Taylor, confused, and closed minded—all because it heard about Taylor's prior drug convictions before it heard about his efforts at rehabilitation.

The majority's conclusions are not supported by any record evidence. When the trial court told the jury about Taylor's prior convictions, it also instructed the jury that the convictions were being made part of the record solely as they might relate to the defense of entrapment. Right after that, Taylor began his defense by taking the stand and trying to explain how he was induced to sell the cocaine to his friend. On cross examination, the prosecutor focused on Taylor's drug addic-

---

56. *Cf. Tricoche v. State,* Del.Supr., 525 A.2d 151 (1987). The present case is thus distinguishable from *United States v. Ladd,* 1st Cir., 885 F.2d 954 (1989). In *Ladd,* the First Circuit excluded mislabeled blood samples because "the chain of custody binding the samples was so seriously flawed as to leave no reliable foundation for admission of the test results." *Ladd,* 885 F.2d at 956. This case is also unlike *Whitfield,* in which this Court reversed the Superior Court's decision to admit

a weapon because the "whereabouts of the admitted weapon were unaccounted-for for three and one-half months following the robbery" and because a third person had possession of the weapon during that period. *Whitfield,* 524 A.2d at 17.

57. *Getz v. State,* Del.Supr., 538 A.2d 726, 734 (1988).

tion, his prior involvement as a "runner" for drug dealers, and the high cost of maintaining his habit. All of this information, which was not at all complicated or hard to follow, was presented to the jury within a matter of hours. What is it about this sequence of events that would confuse the jury?

If the real problem is that the jury was steeled against Taylor because it heard about his criminal past before it got a chance to assess his credibility as a witness, then our whole criminal justice system is in trouble. Juries always hear the State's case first and they are instructed to withhold judgment until all the evidence is in. By the time a criminal defendant takes the witness stand, if the chooses to, most juries have heard a lot of negative information that would undermine their view of the defendant's credibility. Yet we expect juries to remain open minded. In this case, where Taylor voluntarily explained his long history of criminal activity (cocaine addiction/use), how prejudicial could it be for the jury to learn about his prior convictions before Taylor began testifying instead of learning that fact on cross-examination? To be sure, there could be a case where, because a defendant changes his defense strategy at the last minute, the premature introduction of prior convictions would be highly prejudicial. But this is not such a case. Taylor has never argued that he wanted to rely on a defense other than entrapment.

In short, the evidence against Taylor was strong—so strong that his only defense was entrapment. In arguing entrapment, Taylor had to convince the jury that, although he was a drug user, he was not a drug seller. Since Taylor acknowledged that he worked on "odd jobs" (when he worked at all), received food stamps, and had a drug habit that could cost as much as $500 per day, it is not surprising that the jury rejected his entrapment defense. There simply is no reason to believe that the timing of the disclosure of Taylor's prior convictions influenced the verdict and I would affirm the convictions.