Thomas V. ALLEN, Jr., Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 92, 1993.

Supreme Court of Delaware.

Submitted: March 1, 1994.
Decided: April 26, 1994.

N. Maxson Terry, Jr., Terry, Terry, Wright & Speakman, Dover, for appellant.

Timothy J. Donovan, Jr., Deputy Atty. Gen., Dept. of Justice, Wilmington, for appellee.

Before MOORE, WALSH and HOLLAND, JJ.

WALSH, Justice:

In this appeal from the Superior Court, the appellant, Thomas V. Allen, Jr. ("Allen"), asserts several claims of error arising from his conviction of unlawful sexual intercourse in the first degree. We find reversible and dispositive error in his claim relating to the admission of prior bad acts. Accordingly we reverse his conviction and remand for a new trial.

## I

■ The evidence presented at trial was in sharp conflict and subject to various inferences. It was undisputed, however, that Allen and the alleged victim[1] had been friends for some years and had socialized together. Allen claimed that the relationship had been an intimate one, while the victim insisted that they had merely dined in her trailer and occasionally had gone to bars together. The victim admitted that she "used drugs" with Allen ten years previously.

The victim testified that she had spoken to Allen by telephone the evening before the alleged attack. They had "a general conversation" and discussed the status of his children who were in the custody of a third party. Sometime after 2 a.m. the following morning, the victim claimed that she was awakened by someone who put a hand over her mouth, straddled her and tried to remove her underwear. She recognized Allen's voice when he told her to be quiet because he had a friend in the front room of the trailer. The victim testified that Allen attempted vaginal intercourse but was unsuccessful and eventually forced her to have oral sex. In the course of the encounter, Allen allegedly attempted to stuff an afghan into the victim's mouth and choked her. After the sexual contact, Allen told the victim he was leaving, turned on the light and left the trailer by the front door.

The victim testified she called the police immediately after Allen left, around 3:30 a.m. Police records indicate the call was received at 2:47 a.m. The responding police officer noted the victim was hysterical, with a bleeding lip and marks on her neck. There was no evidence of a forced entry although a tire iron was found outside the front door. In the living room, the police observed that the contents of the victim's purse had been dumped out. The victim claimed that a small amount of cash was missing from her wallet. The officer collected as evidence the afghan and a t-shirt found near the bed. DNA evidence presented at trial revealed the presence of semen on the t-shirt but Allen was positively excluded as the contributor of the semen.

Allen testified in his own defense and claimed that he and the victim had engaged in frequent sexual relations for several years either at his home or her trailer. On the night in question, he had been at a bar with a friend, Howard Simmons ("Simmons"). At approximately 2 a.m., he asked Simmons to drive him to the victim's trailer. When they

1. Consistent with the practice of not identifying alleged victims of sexual assaults in our opinions and solely for convenience, we refer to the alleged victim as "the victim" throughout the remainder of this opinion. We recognize, however, that when, as here, consent is the sole defense in a rape case, the use of the term "victim" by a prosecutor at trial is improper and to be avoided. *Jackson v. State,* Del.Supr., 600 A.2d 21, 24–25 (1991).

arrived, he knocked on the trailer door and the victim answered wearing a pajama top and panties. He told her to put something on and she wrapped herself in an afghan. While Simmons remained in the living room watching television, Allen claims to have gone with the victim to her bedroom where she wanted to have sex but he could not achieve an erection. He claims that they argued over a debt he owed her and that he offered her cocaine in payment of the debt but she refused. He testified that the victim later tried to take the cocaine from a night table and in the course of a struggle she sustained the bruised lip and marks on her neck.

Simmons verified Allen's account of a peaceful entrance to the trailer and waiting in the living room for Allen. Simmons related that Allen wanted him to wait until Allen determined whether he could spend the night but, after several minutes, Allen emerged from the bedroom and asked Simmons to drive Allen to his parents' home where Allen spent the night.

Allen presented testimony of several witnesses who testified that Allen and the victim had been sexually intimate on previous occasions and shared drugs. One of these witnesses, Karen Hettinger ("Hettinger"), is the mother of one of Allen's children. Although they had not dated in the past four years, they had frequent contact through child visitation and continued to be friends. During cross-examination, and over defense objection, the prosecutor questioned Hettinger concerning a criminal complaint she had made against Allen in May, 1990, alleging that he broke into her mobile home and stole money. The home was unoccupied at the time. Allen later pleaded guilty to a charge of criminal mischief arising out of the incident. In arguing for its admissibility, the State contended that the evidence was admissible because of the similarity it bore to the present charges. On the same rationale, the State was also permitted, over objection, to present evidence that Allen had assaulted another women, Leah Boler ("Boler"), in her mobile home 12 years earlier. The evidence concerning the Boler incident was elicited through cross-examination of Allen after the

trial court had made a preliminary ruling following a proffer by the State that such evidence was admissible as affecting the elements of "motive, intent and mistake."

Although the evidence presented to the jury was in sharp contrast in terms of whether there was a forced entry of the victim's trailer followed by unlawful sexual intercourse, the jury found Allen not guilty of burglary in the first degree and misdemeanor theft but convicted him of unlawful sexual intercourse in the first degree.

## II

Allen contends that the evidence involving the two prior incidents of confrontation with other women was offered by the State to suggest to the jury that Allen had a propensity toward violence against women. Allen further argues that the Superior Court, in permitting the introduction of such evidence over defense objection, erred in its application of the guidelines set forth in this Court's opinion in *Getz v. State,* Del.Supr., 538 A.2d 726 (1988). The State maintains that the admission of the prior bad acts was in full compliance with the *Getz* guidelines and the Superior Court's rulings of admissibility was a proper exercise of the trial court's discretion.

In *Getz,* this Court articulated six guidelines as standards for determining the admissibility of prior crimes or "bad acts:" (1) the evidence must be material to an issue or ultimate fact in dispute; (2) the evidence must be introduced for a purpose sanctioned by Delaware Rule of Evidence 404(b) or some other purpose not inconsistent with the basic prohibition against such evidence; (3) the evidence proving the prior crime must be plain, clear and conclusive; (4) the prior crimes or acts must not be too remote in time; (5) the probative value of the evidence sought to be introduced must be measured against its prejudicial effect, as required by D.R.E. 403; and, (6) the jury must be specially instructed regarding the limited purpose for the introduction of the evidence. *Id.* at 734. In decisions following *Getz,* this Court has warned of the need for the trial court to carefully examine offers of proof to insure that acts of prior misconduct have

independent logical relevance and do not further the purpose of showing a predisposition to commit the crime charged. *See, e.g., Weber v. State,* Del.Supr., 547 A.2d 948, 955 (1988).

■ As a general proposition, the decision of the trial judge to admit evidence pursuant to Rule 404(b) is reviewed under an abuse of discretion standard. *Pope v. State,* Del. Supr., 632 A.2d 73, 78–79 (1993); *Weber,* 547 A.2d at 955. However, Professor Imwinkelried observes that such a statement is "mistakenly imprecise." Edward J. Imwinkelried, *Uncharged Misconduct Evidence* § 9:70 at 9–121 (1992).

> When the thrust of the objection was that the probative dangers attending the uncharged misconduct outweighed the probative value of the evidence, abuse of discretion is an appropriate standard of review. Given the intangible nature of the factors to be balanced, the appellate court must accord the trial judge wide latitude.
>
> On the other hand, the proper scope of review is quite different when the thrust of the objection relates to a pure question of law.... The appellate court should review the trial judge's resolution of such questions to the same extent and with the same scrutiny applicable to any legal ruling challenged on appeal.

*Id.* (footnotes omitted).

While the prior incidents at issue here were not "uncharged misconduct" since they resulted in criminal charges and convictions, Professor Imwinkelried's observations are equally applicable to other types of 404(b) prior bad acts evidence. *See* 22 Charles A. Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5249 at 540 (1978). ("[T]he trial judge's discretion does not arise unless the evidence is relevant for some purpose other than to prove the defendant's propensity to commit crimes.").

■ Thus, the question of whether the trial judge properly formulated and applied legal precepts governing the admissibility of evidence is one of law, reviewed *de novo. Zirn v. VLI Corp.,* Del.Supr., 621 A.2d 773, 777 (1993). The errors alleged here do not implicate the balancing of interests under Rule 404(b) and we thus exercise *de novo* review over the trial judge's formulation and application of the *Getz* criteria.

### A.

■ The first of the two "bad acts" incidents which the State sought to present involved Hettinger, Allen's former girlfriend and the mother of his child. Hettinger's direct testimony was essentially limited to describing the relationship between Allen and the victim. Prior to cross-examination, the State made an offer of proof, out of the presence of the jury, in which it sought permission to question Hettinger regarding an incident two years previously when Hettinger filed a criminal complaint charging Allen with second degree burglary, theft and criminal mischief. Allen later pleaded guilty to a charge of criminal mischief.

Hettinger testified on *voir dire* concerning the 1990 incident. She claimed that she filed the criminal complaints against Allen as a result of a disagreement during their friendship. She testified that she was not home when Allen entered her trailer and that there was no physical confrontation with Allen. She further testified that she has since concluded that Allen had the right to enter her trailer at any time to visit their child. Hettinger admitted that she complained to the Attorney General's Office concerning what she believed was lenient treatment in the disposition of the charges.

The State offered a two-pronged justification for use of the Hettinger criminal complaints and conduct. It claimed that such evidence was admissible to impeach Hettinger's testimony on the basis of bias, and secondly, that the 1990 incident showed "motive, intent, opportunity."

At the time of the *voir dire* hearing concerning the Hettinger incident, the State advised the trial judge that it would also seek to introduce evidence concerning a second incident involving Allen's criminal conduct. That incident, which occurred in 1980, involved Boler, who, the State contended, was attacked while alone in her mobile home, stabbed, and robbed of cocaine. Allen was initially charged with attempted murder but

entered a plea to a reduced charge of assault first degree. The State argued that this evidence showed a pattern of inflicting violence on women living alone and sought permission to cross-examine Allen concerning that incident as well. Allen objected to the use of both the Hettinger and Boler incidents as violative of D.R.E. 404(b).

In ruling both incidents admissible, the trial judge conducted a *Getz* analysis. He first ruled that evidence of both incidents "on the issue of motive go to the intent of the defendant to enter the dwelling at the time." The trial judge also concluded that the evidence in both incidents went to "the issue of whether there was a mistake of some kind here." The court also ruled that the Boler incident, although 12 years previous, was not too remote because there were police reports and Boler's testimony available "to affirm by refreshed recollection or otherwise" what occurred. The court determined the other *Getz* standards to have been met and gave an appropriate limiting instruction at the time the Hettinger testimony was offered.[2]

After receiving the benefit of the trial court's ruling of admissibility, the State elicited from Hettinger in cross-examination before the jury the details of the 1990 incident which led to Allen's guilty plea to criminal mischief. Hettinger testified that Allen was lawfully in her mobile home, there was no evidence of a burglary nor physical violence to her since she was not at home at the time of the incident. She conceded that she had complained to the Attorney General about what she believed was lenient treatment in not requiring Allen to pay for damage done to the mobile home.

The State argues that evidence of the Hettinger incident was properly admitted under *Getz* because it was related to a "significant issue" in the case concerning the burglary charge, *i.e.*, Allen's motive and intent in entering the victim's dwelling. Allen's plea of guilty arising out of the Hettinger incident was to criminal mischief, not to burglary or any lesser included offense. In view of Hettinger's testimony that Allen had permission to enter her home, the probative nexus of motive and intent is lacking between the two incidents. Since the State elected to prove the materiality of the Hettinger incident through Hettinger's testimony, it is bound by her description of the event. Her testimony must provide the "plain clear and conclusive" proof of the prior bad act. *Getz*, 538 A.2d at 734 (quoting *Renzi v. State*, Del.Supr., 320 A.2d 711 (1974)). The State claims that the trial judge saw in the proffered evidence "a pattern of violence against women living alone." The Hettinger incident was directed against an unoccupied dwelling, however, and the alleged victim of the incident was not present when the incident occurred. At most, the Hettinger incident establishes the criminal mischief charge to which Allen pleaded. But that charge, standing alone, provides no nexus to a charge of burglary with intent to harm an occupant of the dwelling, the indicted offense in this case.

■ At trial the State also offered Hettinger's testimony regarding her confrontation with the defendant to impeach the witness as "biased." Evidence of bias is always admissible to impeach a witness. *Weber v. State*, Del.Supr., 457 A.2d 674, 680 (1983). But bias in favor of a defendant relates to prior acts or statements of a witness which reflect a favorable view of the defendant or his interests. Evidence of previous unfriendly acts or statements against the defendant's interest hardly qualify as evidence of bias in favor of the defendant.

### B.

In our view, however, the evidence regarding the Boler incident represents the more

---

2. The court's instruction to the jury at that time read in part:

> The State claims that both acts were committed in the same peculiar and distinctive fashion. If the defendant committed the other act and you find that both acts were committed in the same distinctive fashion, that might tend to identify the defendant or establish a motive,

plan, or intent to commit the burglary and theft charged in the current indictment against him, but I instruct you should consider that for that limited purpose only if you believe the evidence.

The court later gave a more expansive instruction involving both incidents and somewhat at variance with the first instruction. *See infra* p. 987.

egregious of the objectionable prior conduct. Both in the content of the evidence itself and in the manner in which the evidence was "proved," error occurred.

The Boler incident occurred on March 10, 1980, more than 12 years prior to the date of the alleged offense under consideration at Allen's trial. The State presented no evidence concerning the incident except that elicited through cross-examination of Allen. Allen testified that he had a confrontation with Boler at her trailer over a drug deal in which Boler was the alleged seller of drugs. Allen admitted to striking Boler when she tried to prevent his leaving with unpaid for drugs but denied choking or stabbing her. He later entered a "Robinson plea[3]" to a charge of first degree assault. The State offered no other testimonial evidence of the Boler incident, which concededly did not evidence an unauthorized entry of a woman's home.

At the conclusion of all the evidence, and over Allen's objection, the State was permitted to place in evidence a hospital record concerning the treatment of Boler on March 12, 1980. The record in question contained the following entry: "multiple stab wounds to face—neck, pregnancy." The record was not authenticated as a business record by its custodian. The author of the entry was not identified or the basis for the facts recited otherwise established. The trial court permitted the admission of the hospital record as having "probative value" because "the nature of the crimes are similar." Although the evidence was admitted without the establishment of a proper foundation and contained unverified hearsay, the State argued in summation that the hospital record suggested the similarity of the offense and Allen's intention to dominate women.[4]

■ Apart from its highly prejudicial effect, the admissibility of the Boler incident was erroneous in two respects. First, the trial judge, in his final instructions, instructed the jury that the evidence of prior acts similar to the indicted offenses (sexual intercourse in the first degree, burglary in the first degree and misdemeanor theft) could be considered "in deciding whether the defendant exhibited the same intent, plan, or motive in the same, peculiar, destructive fashion." Neither the Hettinger nor Boler incidents involved a charge of misconduct of a sexual nature. In the Hettinger incident, Allen was, in the testimony of Hettinger, on the premises with her consent and there is no claim by the State that there was any unauthorized entry of the Boler residence.

The link between these prior incidents and the indicted offenses is, in the words of the prosecutor here, Allen's inclination toward violence against women. Such evidence, however, is evidence of propensity or disposition of a general nature which is clearly outside the ambit of admissibility under Rule 404(b). The prior acts have no unusual or distinctive features in relation to the charged offenses, and repetition of confrontations with women "is not, in itself, evidence of a plan." *Getz*, 538 A.2d at 733. Here the State sought to try Allen for who he was rather than what he did. But "the defendant's propensity to commit crimes, or his general bad character, is inconsistent with the presumption of innocence and is never in issue unless he tenders evidence of his character under D.R.E. 404(a)(1)." *Getz*, 538 A.2d at 731.

■ The Boler incident is inadmissible for a second reason—its remoteness. When the defense objected to introduction of this 12 year old incident at trial, the court ruled

---

3. Under the authority of *Robinson v. State*, Del. Supr., 291 A.2d 279 (1972), a defendant may enter a plea of guilty without admitting the commission of the offense if he is satisfied that sufficient evidence exists to secure a conviction.

4.

        *    *    *    *    *    *

Prosecutor: And poor Leah Boler learned that lesson in 1980. Twelve years later he wants you to believe that he has mellowed out. He found Leah Boler alone, too, and he claimed it

was a drug deal gone bad in that instance, too, and Boler was brutally attacked, too. In your absence, the record from Kent General Hospital of Leah Boler's treatment was moved into evidence. It is a State's exhibit, and during your deliberations, we encourage you to take a look at the record. It was his intent in both instances to dominate and control a woman, to rip her off physically, emotionally, and financially, and he did.

the incident not remote because "[t]he [remoteness] issue is really [a question of whether] the evidence that exists of the other crimes [is] sufficiently able to be reconstructed as to afford its probative value and its credibility." The court further noted that the facts in the police report which "was a recording of present sense impressions in the Boler case, the testimony of Ms. Boler herself, if she is available, to affirm by refreshed recollection or otherwise what was contained in a taped or written statement that she gave at the time all convinces me that the remoteness issue is not significant in this case merely because the Boler incident occurred twelve years before the accusation today." This is a fundamental misunderstanding of the remoteness prong of the *Getz* analysis. The remoteness concern under Rule 404(b) is not premised upon the strength or weakness of proof of the prior bad act but rather its relevance. *See Kornbluth v. State*, Del. Supr., 580 A.2d 556, 559 (1990). Indeed, the availability of proof of the prior acts is a consideration under a separate prong of the *Getz* analysis—the requirement that the prior conduct be established by clear and conclusive evidence.

"In large part, the evidence's relevance depends on how recently the defendant committed the act." Edward J. Imwinkelried, Paul C. Giannelli, Francis A. Gilligan & Fredric I. Lederer, *Courtroom Criminal Evidence*, § 908 at 254 (2d ed. 1993). A sliding scale which goes to relevance, not strength of proof, is an appropriate guide. "The degree of similarity between the two incidents necessary to prove common identity [or any other 404(b) characteristic] is thus inversely proportional to the time span between the two crimes." *Commonwealth v. Shively*, Pa. Supr., 492 Pa. 411, 424 A.2d 1257, 1259 (1981). "[A] lengthy time lapse can render the evidence legally irrelevant. Temporal remoteness depreciates or reduces the probative value of the evidence." *Uncharged Misconduct Evidence, supra*, § 8:08 at 8–16.

■ An act committed 12 years earlier is not as relevant as one committed more recently, and may not be relevant at all. While there is no bright line for determining whether an act is too remote, courts tend to analogize to the 10 year time limit contained in Rule 609(b) governing impeachment by evidence of conviction of a crime. *Id.* at 8–17; *Courtroom Criminal Evidence, supra*, § 908 at 254. In any event, the trial judge clearly misapplied the *Getz* criteria by considering strength of proof, rather than relevance, as the test under the remoteness element.[5]

■ The admission of evidence of prior misconduct by the defendant was erroneous as a matter of law. The trial court's balancing of the probative value of such evidence against its prejudicial effect may occur only after such evidence gains admissibility under the other *Getz* standards. Neither incident is admissible here for the reasons discussed. Given the closeness of the evidence in this case and the clash of credibility between the victim and the defendant, there is no basis to conclude, and the State does not contend, that such error is harmless. Accordingly, the conviction must be reversed and a new trial, limited to the charge of unlawful sexual intercourse in the first degree, is required.

Our reversal and directives for a new trial render moot the remaining claims of error relating to the sufficiency and inconsistency of the verdicts, juror misconduct, and other trial related matters.

REVERSED AND REMANDED for a new trial consistent with this opinion.

---

5. The State argues that the Boler incident was admissible under Rule 609(b) as evidence of a conviction within 10 years of "the release of the witness from confinement." This argument was not presented below and played no part in the trial judge's ruling of admissibility. However, only the conviction itself, not the background evidence the State elicited, would be admissible under a Rule 609 offer. *Waller v. State*, Del. Supr., 395 A.2d 365 (1978). Further the State did not establish the length of any confinement or comply with the notice and hearing requirements of Rule 609(b). *See Loper v. State*, Del. Supr., 637 A.2d 827 (1994) (ORDER).