IN THE SUPREME COURT OF THE STATE OF DELAWARE

JESSICA ANDREAVICH,     §
        §    No. 328, 2017
    Defendant-Below,     §
    Appellant,     §    Court Below: Superior Court
        §    of the State of Delaware
    v.     §
        §    Cr. ID. No. 1701002925 (N)
STATE OF DELAWARE,     §
        §
    Plaintiff-Below,     §
    Appellee.     §

Submitted: June 6, 2018
Decided: June 19, 2018

Before **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices.

## **ORDER**

This 19th day of June, 2018, having considered the briefs and the record below, it appears to the Court that:

(1) In October 2016, the police received a tip from a medical marijuana program compliance manager that Jessica Andreavich was illegally selling medical marijuana.[1] The police investigated Andreavich's personal Facebook page, as well as a business page titled "Jekka's Folly," listing prices and offering delivery of marijuana-infused edibles. A detective messaged Andreavich through her

---

[1] App. to Opening Br. at 62 (Letter to Sgt. Allen G. Herring, New Castle Cty. Police, from Joseph F. Schlimer, Med. Marijuana Program Manager (Oct. 3, 2016)).

Facebook, posing as a friend of a veteran suffering from post-traumatic stress disorder, anxiety, and depression.[2] Andreavich responded, offering to speak on the phone and set up a time to meet. They spoke on the phone, and Andreavich asked the detective if she had a medical marijuana card. The detective stated that she did not, but Andreavich agreed to meet with her to discuss how she could help.[3] They met on December 20, 2016, and Andreavich sold the detective $60 worth of marijuana-infused edibles.

(2) On January 5, 2017, the police executed a search warrant at Andreavich's house, where they found marijuana and equipment for producing marijuana-infused edibles. The police arrested Andreavich and she was indicted for aggravated possession, conspiracy second degree, possession of drug paraphernalia, and drug dealing. The State entered a *nolle prosequi* on all charges except the drug dealing and conspiracy second degree charges related to the December 20th purchase.

(3) At trial, the State presented evidence of five Facebook posts to which the defense objected.[4] In the first post, dated September 14, 2016, Andreavich encouraged others to "[l]earn what I do and how to replicate and improve on my

---

[2] *Id.* at 35–36 (Trial. Tr., *State v. Andreavich*, No. 17010012925, at 80–83 (Del. Super. July 25, 2017)); *id.* at 91.
[3] *Id.* at 36 (Trial Tr., at 84).
[4] *Id.* at 25–27 (Trial Tr., at 41–47).

recipes," and listed her prices for marijuana-infused gummies, tincture, and topical salve.[5]  She explained, "I charge only enough to purchase more weed to make more batches.  I accept donations of flower or money from whomever wants to donate."[6]  On December 1, 2016, Andreavich posted a photo of a label on a package of "Marijuana Infused Gummy Leaves," captioned, "Doing some home deliveries to Middletown and Bear area!!  Call me . . . if you would like to meet me and my crew!!!!"[7]  On December 16th, she posted, "Master Kush is available for anyone needing indicia bud and I have gummies available also on my run downstate today.  Please contact me . . . if you would like a visit from the weed fairies."[8]  On December 19th, she posted a photo of herself and two others, captioned "Weed fairy run with two of my favorite fairies lol."[9]  Lastly, on January 10th, after her arrest, she posted, "I was arrested for selling Cannabis to a Veteran who happened to be a cop who was in obvious distress at my home.  I am 100% guilty of this so called crime and I would absolutely do it again and again and again."[10]  In addition, the compliance manager testified that Andreavich signed a document stating, "I attest that I will not deliver

---

[5] *Id.* at 90.
[6] *Id.*
[7] *Id.* at 86.
[8] *Id.* at 87.
[9] *Id.* at 88.
[10] *Id.* at 89.

marijuana to any individual or entity that's not allowed to possess marijuana pursuant to Title 16 of the Delaware Code Chapter 49(a)."[11]

(4)     Andreavich objected to the admission of the Facebook posts, arguing that they "regarded other times, other alleged sales, possession with intent from other times," and thus were unrelated "uncharged misconduct" and irrelevant to the December 20th sale.[12] Andreavich also argued that the prejudicial nature of the posts outweighed their probative value.[13] The court rejected the arguments and found the posts were admissible as evidence of Andreavich's knowledge and intent.[14] The court gave the jury detailed limiting instructions when the posts were introduced[15] and at the close of trial.[16] Andreavich presented a choice of evils defense; but on

---

[11] *Id.* at 62 (Trial Tr., *Andreavich*, No. 1701002925, at 32 (Del. Super. July 26, 2018)).

[12] *Id.* at 26 (Trial Tr., at 42).

[13] *Id.* at 26–27 (Trial Tr., at 45–46).

[14] *Id.* at 26 (Trial Tr., at 43) ("Ms. Andreavich is being charged with Possession With Intent to Deliver, so part of the element of that is that she had the intent to deliver it. If the Facebook posts product lists, in my view that is relevant to the intent to deliver element.").

[15] *Id.* at 28 (Trial Tr., at 53) ("[Y]ou are being shown statements that appeared on a Facebook account. These statements are not admissible to prove the defendant's character, and you should not consider that evidence for such. The evidence is admissible only to prove the defendant's knowledge and intent to commit the charged crimes on December 20th, 2016.").

[16] *Id.* at 81 (Trial Tr., at 108–09) ("You have seen and heard some evidence in this case . . . , such as Facebook posts . . . . You have heard evidence of certain acts allegedly committed by the defendant. These acts are other than the alleged wrongdoing for which the defendant is not on trial. You may not consider these other acts for the purpose of concluding that the defendant has a certain character or character trait and was acting in conformity with that trait with respect to the crimes charged in this case. You may not use the evidence of other acts to conclude that the defendant is a bad person or has a tendency to commit criminal acts and is therefore probably guilty of the charged crimes. You may use evidence related to other acts allegedly committed by the defendant only to determine issues relevant to the charged crimes. In this case, the State contends that the evidence of other acts relates to the defendant's intent and knowledge. You may consider such evidence of other acts for this purpose only.").

July 26, 2018, a jury found her guilty on both counts. The court sentenced her to ten years at Level 5, suspended for one year at Level 3. Andreavich appealed.

(5) On appeal, Andreavich argues that the Superior Court erred by admitting the Facebook posts into evidence because the information was not "plain, clear, and conclusive," did not provide evidence of intent, was not material to an issue or fact in dispute, and was more prejudicial than probative.[17] We review a trial court's admission of evidence for an abuse of discretion.[18] However, "the question of whether the trial judge properly formulated and applied legal precepts governing the admissibility of evidence is one of law, reviewed *de novo*."[19]

(6) Rule 404(b) governs the admissibility of character evidence and evidence of prior conduct. The Rule states, "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."[20] However, it may be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."[21] To determine whether evidence of prior conduct is admissible, this Court applies the analysis set

---

[17] Opening Br. at 4.
[18] *Pope v. State*, 632 A.2d 73, 79 (Del. 1993); *Weber v. State*, 547 A.2d 948, 955 (Del. 1988) ("In deciding whether to admit evidence, the trial judge acts in his sound discretion, and his decision will not be disturbed in the absence of a clear abuse of discretion.").
[19] *Allen v. State*, 644 A.2d 982, 985 (Del. 1994).
[20] D.R.E. 404(b)(1).
[21] *Id.* 404(b)(2).

forth in *Getz v. State*,[22] which requires the evidence be (1) material to an issue or ultimate fact in dispute in the case; (2) introduced for a purpose permitted by 404(b)(2) or "any other purpose not inconsistent with the basic prohibition against evidence of bad character or criminal disposition"; (3) plain, clear, and conclusive;[23] and (4) not too remote in time; and in addition, (5) the court must balance the evidence's probative value against its unfairly prejudicial effect.[24] The trial court admitted the posts under 404(b)(2), explaining that although the evidence was "prejudicial in a sense," it was not unfairly prejudicial because it was "just that admission of guilt and probative of Ms. Andreavich's intent and knowledge."[25]

(7) On appeal, Andreavich argues the court abused its discretion in admitting the Facebook posts because they were inadmissible prior misconduct.[26] She first argues the September 14th post was inadmissible because it is too remote in time and not plain, clear, and conclusive. She explains that "under certain circumstances, the conduct referenced in the posts would have been legal."[27] The post references "sick people," which she argues "implicat[es] that the defendant's

---

[22] 538 A.2d 726, 734 (Del. 1988).
[23] *See Renzi v. State*, 320 A.2d 711, 712 (Del. 1974).
[24] D.R.E. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.").
[25] App. to Opening Br. at 25–27 (Trial Tr., at 42–46).
[26] Opening Br. at 13.
[27] *Id.*

6

intent was to provide products and services only to medical marijuana patients."[28]

The December 20th sale, she points out was under "very specific factual circumstances," rendering the September 14th post immaterial and not probative.[29]

(8) "Evidence is too remote in time 'only where there is no visible, plain, or necessary connection between it and the proposition eventually to be proved.'"[30] Here, the September 14th post occurred only three months prior to Andreavich's arrest and had a visible, plain, and necessary connection to the December 20th sale. It corroborated the compliance manager's tip and aided in the detective's investigation. The post was plain, clear, and conclusive because it directly showed Andreavich's intent to develop and sell marijuana-infused products by listing her prices and stating she wanted others to learn and improve her recipes.[31] While Andreavich argues the posts are unclear because her intended sales might have been legal, she provides no factual basis for this assertion. The parties do not dispute that the December 20th sale was illegal, and the compliance manager testified that Andreavich was not permitted to sell marijuana to those without a medical marijuana

---

[28] *Id.* at 14.

[29] *Id.* at 15.

[30] *Kendall v. State*, 726 A.2d 1191, 1195 (Del. 1999) (quoting *Lloyd v. State*, 604 A.2d 418, 1991 WL 247737, at *3 (Del. 1991) (TABLE)); *see also Allen v. State*, 644 A.2d 982, 988 (Del. 1994) ("[A] lengthy time lapse can render the evidence legally irrelevant. Temporal remoteness depreciates or reduces the probative value of the evidence." (quoting EDWARD J. IMWINKELRIED, UNCHARGED MISCONDUCT EVIDENCE § 8:08, at 8–16 (1992)).

[31] App. to Opening Br. at 90.

card.[32] Thus, the September 15th post is relevant and material, and its probative value outweighs any prejudicial effect.

(9) Andreavich next argues the December posts lacked probative value, were not plain, clear, and conclusive, and did not provide evidence of intent. She explains that they did not express "any clear intent to engage in acts of drug dealing," but "could have included legal conduct under the Delaware Medical Marijuana Act."[33] In addition, she points out that they referenced only interest in meeting, and Andreavich was "within the bounds of the law to meet with people, discuss the medical marijuana program, or arrange to act as an individual's caregiver."[34] Thus, the posts were immaterial to the ultimate fact in dispute—whether the conduct was justified under a choice of evils defense—and "only tended to inflame the jury due to a broad scope of potential interpretation."[35] Lastly, she points out that the recorded conversation was sufficient to show clear evidence of intent, which was not "so clearly gleaned from her Facebook posts."[36]

(10) In response, the State points out that Andreavich provided no facts to support its contention that the meetings were legal. In addition, the State argues,

---

[32] *Id.* at 62–63 (Trial Tr, at. 30–39); *see id.* at 63 (Trial Tr., at 39) (Q. "Is there ever a circumstance where a cardholder or caregiver or both could transfer marijuana to a noncardholder?" A. "Absolutely not.").
[33] Opening Br. at 15.
[34] *Id.*
[35] *Id.* at 16.
[36] *Id.* at 18.

8

posts had "independent logical relevance because they tended to make it more probable that Andreavich was dealing in the illegal sale of marijuana-infused edibles," showing her intent and knowledge.[37] The State argues the posts were plain, clear, and conclusive because they bore her name, picture, prices, and offers to deliver. Thus, the posts were admissible under 404(b).

(11)  We agree. Andreavich's argument that her proposed sales might have been legal fails in light of the compliance manager's testimony.[38] He explained that only First State Compassion may legally sell and transfer marijuana in Delaware, and no one else. While Andreavich could transfer marijuana to other cardholders, she could not sell marijuana for any profit or benefit.[39] Contrary to her argument that the posts did not show "any clear intent" to deal marijuana—because she could have just been meeting with people to discuss the medical marijuana program—she was posting price lists and offering deliveries, displaying a clear intent to sell. The posts' probative value as to Andreavich's intent and knowledge outweighs any prejudicial effect, and the jury instructions ensured proper use of the evidence.[40]

(12)  Lastly, Andreavich argues the January 10th post was "not the type of evidence intended to be admitted" under 404(b), and "simply reflects a layperson's

---

[37] Answering Br. at 13.
[38] App. to Opening Br. at 62 (Trial Tr., at 30–33).
[39] *Id.* at 64 (Trial Tr., at 38–39); *id.* at 63 (Trial Tr., at 37) (Q. "As a caregiver, is an individual authorized to sell marijuana?"  A. "No, ma'am.").
[40] Answering Br. at 12–13.

lack of knowledge with regard to defenses available under the factual circumstances."[41] Thus, she asserts, the prejudicial effect outweighs the probative value. The State responded that "[i]t was a highly probative admission by Andreavich of her intent to deal in marijuana regardless of the consequences," and it was not unfairly prejudicial.[42] Andreavich does not explain why it was not the "type" of post intended to be admitted under Rule 404(b). Andreavich's admission was highly probative, directly showing her intent to deal marijuana with full knowledge that she was doing so illegally.

(13) Our case law is consistent with this result. In *Torres v. State*, the trial court admitted evidence of a prior uncharged drug transaction between the defendant and a witness.[43] This Court affirmed, explaining that the evidence was admissible under 404(b) as evidence of intent because it showed "a continuing plan to distribute cocaine" and made it "more probable" that the defendant dealt a large amount of cocaine this time.[44] In addition, the evidence was plain, clear, and conclusive because it was presented by direct witness testimony, and the Court found that any "danger of misuse" of the evidence was "properly dealt with by a limiting instruction."[45] Similarly, the Facebook posts established Andreavich's "continuing

---

[41] Opening Br. at 17.
[42] *Id.* at 14.
[43] 979 A.2d 1087, 1099 (Del. 2009).
[44] *Id.*
[45] *Id.* at 1100.

10

plan" to distribute marijuana by listing prices and offering deliveries, and the evidence was plain, clear, and conclusive because the posts were provided to the jury and directly testified to by the detective. Lastly, the trial court gave thorough limiting instructions to prevent any misuse of the evidence. Therefore, like in *Torres*, the court did not abuse its discretion in admitting the evidence.[46]

(14) In *State v. Hynson*, this Court reversed the Superior Court's holding that evidence of prior uncharged cocaine deals was inadmissible.[47] The trial court found the prejudicial effect outweighed any probative value because the prior deals were not inextricably intertwined with the deal at issue, the amounts of cocaine differed, and there was no continuous course of dealing.[48] This Court disagreed, explaining that "the evidence of the prior transactions is highly probative on the issue of the weight of the drugs" and was not unfairly prejudicial "in light of [the defendant's] admission that he possessed cocaine at the time of his arrest."[49] And the Court explained that "any prejudice resulting from admitting the evidence could be reduced by a 'cautionary instruction which fully and carefully explains to the jury the limited purpose for which the evidence has been admitted.'"[50] Similarly, the

---

[46] *See also Kendall*, 726 A.2d at 1195 (affirming admission of prior business misconduct as evidence of intent to commit fraud because it revealed a "common pattern of crime," was presented by witnesses with personal knowledge, and the trial court gave limiting instructions).

[47] 608 A.2d 730, 1992 WL 53419 (Del. 1992) (TABLE).

[48] *Id.* at *4.

[49] *Id.*

[50] *Id.* (quoting *Weber*, 547 A.2d at 956).

11

Facebook posts were highly probative of Andreavich's intent to deal marijuana, they were not unfairly prejudicial in light of Andreavich's admission that the December 20th transaction was illegal, and any prejudice was reduced by the jury instructions. The court did not abuse its discretion in admitting the Facebook posts under Rule 404(b).

(15) Lastly, we agree with the State that "regardless of the Facebook posts prior to Andreavich's arrest, there was overwhelming evidence of Andreavich's guilt of drug dealing and conspiracy on December 20, 2016."[51] The compliance manager testified that Andreavich was not permitted to sell marijuana-infused products, the December 20th transaction was recorded, and the detective testified about the surrounding circumstances.[52]

NOW, THEREFORE, it is hereby ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ *Collins J. Seitz, Jr.*
Justice

---

[51] Answering Br. at 14–15.

[52] *Howard v. State*, 704 A.2d 278, 282 (Del. 1998) ("An error in admitting evidence is harmless where the properly admitted evidence, taken alone, is sufficient to support a conviction.").