IN THE SUPREME COURT OF THE STATE OF DELAWARE

PRESTON WARD,           §
                        §    No. 515, 2019
    Defendant Below,    §
    Appellant,          §    Court Below: Superior Court
                        §    of the State of Delaware
    v.                  §
                        §    Cr. ID No. 1806006562
STATE OF DELAWARE,      §
                        §
    Plaintiff Below,    §
    Appellee.           §

Submitted: August 12, 2020
Decided: September 28, 2020

Before **SEITZ**, Chief Justice; **VAUGHN**, and **MONTGOMERY-REEVES**, Justices.

# O R D E R

Upon consideration of the parties' briefs and the record of the case, it appears that:

(1)    The appellant, Preston Ward, was convicted after a jury trial of one count of Second Degree Sexual Abuse of a Child by a Person in a Position of Trust. He raises five issues on appeal. The first is that the Superior Court committed plain error by admitting into evidence a prior, recorded statement of the victim, referred to in this order as A.M. He contends the State failed to establish the foundation required by 11 *Del. C.* § 3507 for the statement's admission. Ward's second claim

is that the Superior Court abused its discretion by failing to exclude prior bad acts evidence contained in A.M.'s prior, recorded statement. His third claim is that the Superior Court committed plain error by admitting into evidence testimony of a forensic nurse examiner that less than 10% of children who may be victims of sexual assault manifest physical injuries. The fourth claim is that the Superior Court judge committed plain error by not intervening *sua sponte* when the prosecutor said during summation that "this case isn't definitely invented by [A.M.]" Ward's final claim is that the Superior Court abused its discretion by denying his motion for a new trial. In the motion, Ward argued that he should receive a new trial because the prosecutor misled the jury by stating during summation that a test for seminal fluid was positive based upon a preliminary test when, in fact, subsequent testing showed that the preliminary test was a false positive. We find no merit to Ward's claims and affirm.

(2)     Ward and his wife, M.W., lived together in a three-bedroom home along with their three children. The eldest, A.M., was M.W.'s biological daughter and Ward's stepdaughter; the youngest two were the Wards' biological sons.

(3)     On Sunday, June 10, 2018, M.W. was awoken briefly between 5:00 and 6:00 a.m. by Ward, who asked her whether she had a dollar to put under A.M.'s pillow. A.M. had lost a baby tooth the night before and put the tooth under her pillow for the tooth fairy. The record indicates that after speaking with her husband, M.W. fell back asleep. Sometime later she was awoken by her 6-year old son who

2

wanted her to fix something on the TV. She told him to have his father do it, but the son said Ward was at work. Knowing this could not be true because her husband did not work on Sundays, M.W. got up and looked around for her husband. While doing so, she noticed that A.M.'s bedroom door was shut. This was unusual to her, as it was the custom in their home to leave doors open. She opened the door. The room was still dark, but M.W. saw her husband, wearing a t-shirt and underwear, laying on the bed next to A.M. Ward immediately "jumped out" of A.M.'s bed and fell. M.W. also saw A.M. pull up her pajama bottoms. M.W. began screaming and yelling, and asked Ward what was going on. She grabbed his genitals through his clothes and realized he was not aroused. Ward told her, "See, I'm not hard."[1]

(4)     M.W. called her sister-in-law over to the house. When the sister-in-law arrived, she told Ward he should leave. She and M.W. then took A.M., who was eleven years old at the time, to Christiana Hospital. At Christiana Hospital, Anita Symonds, R.N., a forensic nurse examiner, performed a sexual assault examination on A.M. As part of that examination, Symonds took swabs of A.M.'s vaginal area. During the examination, in response to Symonds' questions, A.M. stated that Ward had touched her vagina with his hand that morning. Symonds observed no genital injuries on A.M., and A.M. indicated that she had no pain in that area. Symonds testified during direct examination at Ward's trial that, in her experience, less than

---

[1] *Id.* at B33.

10 percent of potential victims of sexual abuse have genital injuries, so it was not unusual that she did not observe any injuries on A.M. This testimony is the subject of Ward's third claim on appeal. Defense counsel did not object to Symonds' testimony.

(5) Christiana Hospital reported A.M.'s allegations of sexual abuse to the New Castle County Police Department, which opened an investigation. M.W. was instructed to take A.M. to A.I. DuPont Hospital. Once there, A.M. was interviewed by Amy Kendall of the Children's Advocacy Center (CAC). Kendall recorded her interview of A.M. In the interview, A.M. told Kendall that Ward had touched her vagina and had done so before. She had not said anything about the prior incidents to her mother. She expressed concern that M.W. and Ward would get divorced. She also told Kendall that the prior incidents had started maybe a few months earlier and occurred less than once a week. She said that she was eleven when all the incidents took place.

(6) Police arrested Ward and collected a DNA sample from him. Officers also collected swabs from A.M.'s bedsheets. Officers sent the swabs taken at Christiana Hospital, the swabs from the bedsheets, and Ward's DNA sample to the Division of Forensic Science in Wilmington, Delaware, for testing. Testing was performed at the Division of Forensic Science by Bethany Kleiser. She testified at trial that she found that swabs from A.M.'s vagina and the swabs from the bedsheets

4

tested positive for male DNA. From the sample taken from A.M.'s fitted sheet, she testified, "Preston Ward c[ould] . . . be included as [a] potential DNA contributor," and the likelihood "of randomly selecting an unrelated individual that c[ould] be included as a contributor to the mixture . . . in this case [i]s one in 76,980,000" or "about 76 Delawares as far as the amount of people in order to find another person included in this mixture."[2] She also testified that the sample taken from the fitted sheet had a "strong positive reaction"[3] to a Brentamine test, a test specifically designed to test for the presence of seminal fluid. While she could not definitively say that what she observed was seminal fluid, she noted that the Brentamine test indicated a positive reaction with regard to the sample from the fitted sheet. Because of that reaction, she took the sample through further testing and discovered that the sample did not contain any seminal fluid.

(7) At trial the State offered A.M.'s prior, recorded statement to Kendall at the CAC into evidence. In direct examination of A.M. before the § 3507 statement was admitted, the State asked A.M. whether she talked to people other than her mother that day about what had happened, and she answered that she had. When asked whether she was "trying to tell them the truth" when she talked to people the morning of the incident, she answered, "I don't remember, but I – I tried, but I don't

---

[2] *Id.* at B74.
[3] *Id.* at B79-80.

– I don't know."[4]  When specifically asked about the CAC interview, she said she spoke to the interviewer about what had happened that morning and did so voluntarily.  Defense counsel did not raise any § 3507 foundational objection to admission of the statement.  Defense counsel did object, however, on Rule 404[5] grounds, to those parts of the statement in which A.M. indicated that Ward had sexually touched her on previous occasions.

(8)  After carefully considering defense counsel's Rule 404 objection, the Superior Court ruled as follows:

> All right.  I am looking at Rule 404(b)(2) which states that evidence of a wrong or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.  And 404(b)(2) permitted uses, as long as there's notice, which clearly there has been in this case, is that the evidence may be admissible for another purpose, and then it lists those purposes.
>
> I find that the evidence is used for another purpose and is going to be admissible to demonstrate intent, absence of mistake on the part of the witness, and lack of an accident.  So the repetitive nature of the conduct goes to those issues.  It's also relevant when the credibility of the witness is being attacked, but I think in this case more importantly it goes to absence of mistake, lack of accident, intent, it even goes toward knowledge and perhaps plan.
>
> So I am denying the Defense motion to exclude those past alleged acts, but I will give the instruction to the jury.[6]

---

[4] *Id.* at B42.
[5] Delaware Uniform Rule of Evidence 404.
[6] *Id.* at B23.

(9)     Before the §3507 statement was admitted, the trial court further explained its ruling, stating:

> I'm going to elaborate just a little bit on the ruling that I made before opening statements, and that is that I have conducted a balancing analysis pursuant to Rule 403 which I have found that the probative value of the alleged prior bad acts are not substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, or present a cumulative evidence. I also find that the prior alleged bad acts are not too remote in time from the charged offense, and that I am going to instruct the jury that the evidence will be admitted for a limited purpose and not for the purpose of them concluding on the basis of that evidence that the Defendant committed the charged act on the occasion contained in the indictment.[7]

The instruction referred to was included in the court's final jury instructions.

(10)     During summation, while making an argument concerning A.M.'s credibility, the prosecutor remarked:

> This case isn't definitely invented by A[.M.] A[.M.] had to endure a very intrusive sexual examination at the age of 11. Prior to this she and her stepdad were close, and there's no evidence that there was any problems between them. Back on June 10, 2018, A[.M.] consistently said that he touched her vagina, she said this to the nurse and to the forensic interviewer. Remember, never once did she attempt to take that back. During her interview she felt uncomfortable, there was long pauses, and then when she got on the stand she stated she was nervous. What did A[.M.] gain from this.[8]

---

[7] *Id.* at B26.
[8] *Id.*

Defense counsel raised no objection during the State's closing argument. The first sentence of this quotation – that "This case isn't definitely invested by [A.M.]" -- is the subject of Ward's fourth claim on appeal.

(11) After the jury's finding of guilt, Ward moved *pro se* for a new trial, raising several arguments, only one of which bears on this appeal. In relevant part, Ward contended that the State improperly misled the jury during closing arguments by arguing that the Brentamine test, discussed during Kleiser's testimony, showed that Ward's seminal fluid was on the bedsheets when, in fact, subsequent testing showed that the Brentamine test was a false positive and Ward's fluid was not on the bedsheets. On appeal, Ward has identified the specific portion of the prosecutor's closing complained of as the following:

> What was the other important thing about that test, it was positive for seminal fluid. Now, granted, she said that the seminal fluid test could be false, it could – like, for numerous reasons, but she tested it anyway because of the strong reaction that it had. She conducted the first step, confirmed that there was male cells in there.

The Superior Court denied Ward's motion in a written opinion, finding that the State clarified that the DNA might not be seminal fluid despite the positive Brentamine test reaction.

(12) We will first consider Ward's claims that call for plain error review. The standard for plain error review is well known. "To warrant review on appeal

8

when the issue has not been fairly presented [to the trial court], there must be 'plain error.'"[9] "Under the plain error standard of review, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[10] "[T]he doctrine of plain error is limited to material defects which are apparent on the face of the record; which are basic, serious, and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice."[11]

(13) Ward's first, third, and fourth claims are governed by plain error review. The first claim is that the State did not lay a proper foundation under 11 *Del. C.* §3507 for admission of A.M.'s prior, recorded statement. He argues that the State failed to ask the witness specifically whether what she said in her CAC interview was true. However, the State did ask her whether she tried to tell the truth when she spoke to people that morning, which by inference can be considered as including the CAC interviewer. A.M. testified that her prior, recorded statement was given voluntarily, and defense counsel had a full and effective opportunity to cross-examine her concerning the statement. Any legal error relating to Ward's first claim, if any, is not basic, serious, and fundamental in its character. Admission of the prior,

---

[9] *Zhurbin v. State*, 104 A.3d 108, 113 (Del. 2014).
[10] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986) (en banc).
[11] *Id.*

9

recorded statement did not deprive the accused of a substantial right or clearly show manifest injustice.

(14) Ward's third claim is that it was error to admit Nurse Symond's testimony that in her experience less than 10% of children who may be victims of sexual assault manifest physical injury. He argues that her testimony on this point was not relevant, was inadmissible hearsay if learned by her through training, and, even if relevant, was unfairly prejudicial. Nothing in the record, however, suggests that Nurse Symond's testimony was anything other than a truthful statement of what she had experienced in her profession in years of conducting sexual assault examinations. There is no plain error in her testimony.[12]

(15) Ward's fourth claim is that the prosecutor vouched for the credibility of A.M. during summation when she commented that "This case isn't definitely invented by [A.M.]." This is a single statement in the context of what is otherwise an unobjectionable argument concerning A.M.'s credibility. The prosecutor's alleged vouching, if it was vouching, does not satisfy the demanding plain error standard. None of Ward's first, third, and fourth claims rise to the level of plain error.

---

[12] In his reply brief, Ward argues for the first time that the State was guilty of a "blatant discovery violation" in connection with Symonds' testimony. However, appellants waive arguments not made in their opening briefs. Sup. Ct. R. 14(b)(vi)(A)(3).

10

(16) As stated above, Ward's second claim is that the Superior Court abused its discretion by failing to exclude prior bad acts evidence contained in A.M.'s prior, recorded statement. "An abuse of discretion occurs when a court has exceeded the bounds of reason in light of the circumstances, or so ignored recognized rules of law or practice so as to produce injustice."[13]

(17) Delaware Uniform Rule of Evidence 404(b) allows the court, in its discretion, to admit evidence of a defendant's prior bad acts for certain, limited purposes.[14] To do so, the court must consider the well known factors we announced in *Getz*.[15] Those factors require the following. First, the evidence "must be material to an issue or ultimate fact in dispute in the case," i.e., relevant.[16] Evidence is relevant if it has any logical tendency to make an ultimate fact in consequence more or less probable.[17] Second, the evidence sought to be admitted must be introduced for a proper purpose.[18] Under Rule 404(b)(2), proper purposes include the use of such evidence in "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Third, the evidence must be

---

[13] *Thompson v. State*, 205 A.3d 827, 834 (Del. 2019) (quoting *McNair v. State*, 990 A.2d 398, 401 (Del. 2010)).
[14] *See, e.g.*, *Morse v. State*, 120 A.3d 1, 8 (Del. 2015) (reviewing trial court's decision to admit evidence under Rule 404(b) for abuse of discretion).
[15] 538 A.2d at 734.
[16] *Id.*
[17] D.R.E. 401.
[18] *Getz*, 538 A.2d at 734.

"plain, clear, and conclusive."[19] "Eyewitness testimony is normally deemed sufficient to satisfy the plain, clear and convincing standard utilized for admission of other crimes evidence under Rule 404(b)."[20] Fourth, the evidence "must not be too remote in time from the charged offense."[21] "Evidence is too remote in time 'only where there is no visible, plain, or necessary connection between it and the proposition eventually to be proved.'"[22] Fifth, even if evidence of a prior bad act is relevant, it may be excluded if its "probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[23] The factors we announced in *Deshields v. State* guide courts in undertaking this balancing test.[24] Sixth, and finally, the trial court must provide the jury with a limiting instruction.[25]

(18) Ward has preserved his challenge by objection at trial to only one of the six *Getz* factors—whether the alleged prior bad acts evidence was relevant. We

---

[19] *Id.* at 734 (quoting *Renzi v. State*, 320 A.2d 711, 712 (Del. 1974)).

[20] *Johnson v. State*, 983 A.2d 904, 934 (Del. 2009) (en banc).

[21] *Getz*, 538 A.2d at 734.

[22] *Andreavich v. State*, 189 A.3d 692, 2018 WL 3045599, at *2 (Del. June 19, 2018) (ORDER) (quoting *Kendall v. State*, 726 A.2d 1191, 1195 (Del. 1999) (quoting *Lloyd v. State*, 604 A.2d 418, 1991 WL 247737, at *3 (Del. Nov. 6, 1991) (ORDER))).

[23] D.R.E. 403; *accord Getz*, 538 A.2d at 734.

[24] 706 A.2d 502, 506-07 (Del. 1998) (providing nine factors for the court's consideration: "(1) the extent to which the point to be proved is disputed; (2) the adequacy of proof of the prior conduct; (3) the probative force of the evidence; (4) the proponent's need for the evidence; (5) the availability of less prejudicial proof; (6) the inflammatory or prejudicial effect of the evidence; (7) the similarity of the prior wrong to the charged offense; (8) the effectiveness of limiting instructions; and (9) the extent to which prior act evidence would prolong the proceedings" (citation omitted)).

[25] *Getz*, 538 A.2d at 734.

review that issue for abuse of discretion. On appeal he raises challenges to other *Getz* factors, which, because they were not raised at trial, we will review for plain error.

(19) As an initial matter, we find that the Superior Court did not abuse its discretion in finding that A.M.'s prior, recorded statement describing Ward's alleged prior acts was relevant. The charge of Unlawful Sexual Abuse of a Child by a Person in a Position of Trust (Second Degree) requires proof that the accused intentionally had sexual contact with a child under the age of 16.[26] Whether Ward had previously had inappropriate sexual contact with A.M. is directly relevant to his state of mind at the time of the charged incident and whether Ward intentionally touched A.M. or did so only by mistake or accident.

(20) On appeal, for the first time, Ward also argues that the prior bad acts evidence was not "plain, clear, and conclusive;" that it was too remote in time; that its probative value was substantially outweighed by its prejudicial effect; and that the Superior Court failed to give the necessary limiting instruction contemporaneously when the evidence was admitted, instead waiting to include it in the final jury instructions. We are satisfied that the evidence was sufficiently "plain, clear, and conclusive," as it took the form of the prior statement of the alleged victim

---

[26] 11 *Del. C.* § 778A(1).

13

of those prior acts, A.M.[27]  Although A.M.'s prior statement was at times

inconsistent and sparse on details, she was unequivocal in her responses to Kendall

that Ward had previously touched her vagina in the same manner in which he

touched her the morning of her interview with Kendall.  We also find that the

evidence was not too remote in time to be admissible.  While A.M. could not provide

the precise dates of those alleged prior incidents or the number of prior incidents that

took place, she consistently maintained that all of the prior incidents had to have

occurred in the months prior to the incident for which she was being interviewed

because she was eleven years old when the incidents began and she was still eleven

years old at the time of the incident for which Ward was ultimately convicted.  Next,

while the trial court did not go through the *Deshields* factors on the record, we see

no plain error in its ruling that the probative value of the other bad acts evidence was

not substantially outweighed by the danger of unfair prejudice.  Finally, there is no

merit to Ward's claim that the Superior Court erred in not giving the limiting

instruction to the jury contemporaneously with the presentation of the statement.

While that is a better practice, Ward does not cite any case law suggesting that the

trial court must provide the *Getz* limiting instruction in such a fashion, at least not in

the absence of a request from defense counsel that it do so.  In sum, any legal error

in the just discussed arguments which Ward makes for the first time on appeal, if

---

[27] *Cf. Johnson*, 983 A.2d at 934; *Vanderhoff*, 684 A.2d at 1233.

any, is not basic, serious, and fundamental in its character, did not clearly deprive the accused of a substantial right, or clearly show manifest injustice.

(21) Ward's fifth and final claim, as mentioned above, is that the Superior Court abused its discretion in denying his motion for a new trial. The one allegation discussed in the motion which is raised in this appeal is that the prosecutor misled the jury during summation by arguing that the preliminary test performed by Kleiser, the Brentamine test, was positive for seminal fluid, when, in fact, subsequent testing showed that the Brentamine test was a false positive and no seminal fluid was present. The Superior Court properly reviewed this allegation for plain error since defense counsel made no objection at trial. We find no abuse of discretion on the part of the Superior Court in denying Ward's motion for a new trial. The prosecutor's statement did not constitute misconduct. The prosecutor did not misstate the evidence presented at trial when arguing, in summation, that the Brentamine test was positive. She also clarified that Brentamine can produce a false positive. While the prosecutor might have been more forceful in pointing out that the Brentamine test did turn out to be a false positive, there is no plain error. The jury was fully aware from listening to the evidence that the Brentamine test turned out to be a false positive. There is no arguable error associated with the prosecutor's statement that is basic, serious and fundamental in character. The matter complained

of did not clearly deprive the accused of a substantial right, or clearly show manifest injustice.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is affirmed.

BY THE COURT:


/s/ James T. Vaughn, Jr.
Justice

16